# Frank Donlevy et al., Appellants, v. S. E. Sims et al., Appellees.

## Gen. No. 5,612.

1. FEES AND SALARIES—*county board has implied power to employ expert accountant under act relating to.* Under R. S. c. 53, § 52, providing that county boards shall have full authority to inspect, examine and audit the records, fee books, etc., of any county officer paid in whole or in part by fees, and to correct the accounts, and providing for a penalty for refusal or failure to permit county boards or any one authorized by them to have free

access to such books, the county board has the implied power to make a contract with an expert accountant, requiring him to investigate certain county offices and report to the board.

2. County board—*what contract beyond power* of. It is beyond the power of the county board to make a contract with an expert accountant, requiring him to examine certain county offices to determine the arrears, make a conclusive decision, and settle with the officers by that conclusion alone, since it would deprive the board of power which they must exercise.

3. County board—*employment of expert accountant by, not precluded by approval of auditor's report.* The fact that the county auditor has audited the books of certain county officers and that the county board has approved his report does not preclude the board from making a further investigation of the offices and from employing an expert accountant to investigate thoroughly.

4. County board—*what within exclusive discretion of.* It is within the exclusive discretion of the county board to determine whether it is wise to make a particular contract with an expert accountant for an investigation of certain county officers.

5. County board—*may investigate office of state's attorney.* County boards have authority to investigate the office of the state's attorney, since such attorney receives certain fees, portions of which the law requires him to account for to certain county officers.

Appeal from the Circuit Court of La Salle county; the Hon. Edgar Eldredge, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912. *Certiorari* denied by Supreme Court (making opinion final).

Butters & Armstrong, for appellants.

Max Murdock and Clarence Griggs, for appellees.

Mr. Justice Whitney delivered the opinion of the court.

Appellants were tax payers of La Salle county who filed a bill in equity against the County of La Salle, the county clerk, and county treasurer of that county, and S. E. Sims, to obtain a decree that a certain contract between the county and Sims is void, and to cancel it, and to restrain the county clerk from issuing warrants under said contract, and to restrain the county treasurer from paying said warrants, and to restrain said Sims from attempting to collect the

moneys provided by said contract to be paid to him, and to restrain said county from paying any moneys under said contract. The bill was sworn to, and there were two other affidavits filed on a hearing of the application for a temporary injunction. A demurrer was interposed to the bill and the demurrer and the motion for a temporary injunction were heard at the same time. The court found there was no equity in the bill, sustained the demurrer, and denied the motion for a temporary injunction. The complainants elected to abide by their bill, and the bill was dismissed for want of equity.

Certain of the complainants perfected an appeal to the Supreme Court, but that court found that no constitutional question was involved, and that the case did not involve the validity of an ordinance, and that it had no jurisdiction, and the case was transferred to this court, pursuant to the statute.

A reference to the statutory provisions will show that they practically control all of the questions involved in this appeal.

The bill shows that a certain auditing committee, and said Sims, entered into a contract, wherein said Sims agreed to make a thorough investigation of the office of county clerk for eight years; the recorder for six years; the sheriff Ole Benson, for four years; the sheriff, Frank Trumbo for four years; H. L. Arnold, county treasurer for four years; John Goedtner for four years; C. S. Cullen, states attorney, for ten years; N. R. Foster, superintendent of schools, for four years; U. J. Huffman, superintendent of schools, for four years; J. N. St. Clair, probate clerk, for six years; and the circuit clerk for six months, to June 1, 1911; and to make due report of his investigation to the county board, for the compensation of six thousand dollars, payable five hundred dollars a month for six months, and the balance on the completion of the investigation and report. The auditing committee referred this contract to the county board, with a re-

cital that the board had previously authorized this auditing committee to employ outside expert aid, and that it had entered into this contract with Sims, and requested that authority be given the county clerk to draw warrants on the county treasurer, payable out of the county funds, for the sums due Sims, on the order of the three members of the auditing committee, as the money became due to him. It is alleged this contract is unauthorized, unconscionable, a waste of county funds, and without any authority in law. It is also alleged that some years before the county board established the office of county auditor, and that the books of all the officers named, except the state's attorney, had been audited by that officer, and that their action had been approved by the county board, and that the books had been found to be correct. The bill is based on the theory, (1) that the county board had no lawful authority to make such an investigation; (2) that if it did, it had to be made wholly at the meeting of the board in open session; (3) that it had no power to investigate the office of state's attorney, and as the payment was in a gross sum, without distinguishing the amount to be paid for the investigation of the office of state's attorney, therefore the entire contract price was void; (4) that the amount proposed to be paid was very much in excess of the value of Sim's services. Section 24 of chapter 34, Illinois Statutes, authorizes counties to make all contracts, and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers. Section 25, paragraph 2 of this chapter provides that the county board shall have power to manage the county funds, and county business except as otherwise specifically provided; and paragraph 3 of the same section provides that county boards shall have the power to examine and settle all accounts concerning the receipts and expenditures of the county.

Section 52, chapter 53 of the Statutes provides that

county boards in counties of all classes shall have full authority, in their respective meetings, to inspect, examine and audit the records, fee books, books, papers, forms, memoranda and reports of any county officer who is paid in whole, or in part, by fees, in which fees are charged or recorded, and in which is kept any minutes or records of business of their respective offices, for·the purpose of auditing, checking and correcting the accounts rendered by said county officers; and said section last referred to provides for a penalty for any officer who fails or refuses to permit county boards, or any one authorized by them, to have free, unobstructed access to his books, etc.; and by the provision of that section it is clearly an implied power that county boards have to authorize a person to perform some part of the duty of the board. Appellants contend that all fee books, papers, vouchers and reports which bear upon the amount that any county officer has received, or paid out, must be brought into public meeting of the county board, and that the board must sit in session, and as a whole must examine each paper and each item necessary to be investigated; and that all the work of determining that a true account has been rendered, must be performed in open sessions of the board. Manifestly, this is practically impossible. It would require the expenditure of time which members of the county board can not afford to give. It even involves matters of bookkeeping, and the adding of many columns of figures, and many members of a county board have not had the training that fits them to perform such work rapidly and correctly. If it was the purpose of this contract to have Sims determine the arrears and make a conclusive decision on the subject, and settle with the county officers by that conclusion alone, undoubtedly that would be beyond the power of the board. It would be depriving the board of power which they must exercise, but no reason is seen why the board cannot employ an expert accountant to go over the

books, reports and papers, and even make other investigations to search for hidden or omitted items, and to make full report thereof to the board; and then the board can investigate those things which require their attention, and then determine what action shall be taken. No other conclusion than this would be reasonable or sensible. It is claimed, however, that one officer had already been over these books, and had reported them correct, and the board had adopted that report. That may be, and still the board may have found reason to believe that the county auditor had made mistakes, or had not made a sufficiently thorough investigation. They were not precluded by their action, and the county auditor's report, from making further investigation, and we do not doubt the power of the board to employ another man to make a more thorough investigation. It is contended that there is a difference between an audit and an investigation. That may be so, but the contract in this case is simply that Sims shall make a thorough investigation of certain offices.

The resolution under which his employment was ratified was that the auditing committee should have power, if deemed necessary, to employ outside expert aid and the contract with Sims, which is attached to that report of the auditing committee, provides as above stated, that Sims was to make a thorough investigation of certain offices, and make a true report of his investigation. He was in no way authorized by this contract to audit anything. He was simply to make an investigation, and report to the board. In our judgment the county board had authority to make this contract. The question whether it was wise to make this investigation is purely within the discretionary power of the county board, and the question whether they are paying more than some other man would undertake to do the work for is also a matter within the exclusive discretion of the county board. There is no averment in the bill of fraud,

and no evidence of it in the entire proceeding. It is argued that the state's attorney is not a county officer, and that the board had no power to audit or investigate his accounts and that as this contract provides for paying one gross sum for the work, which included an investigation of the state's attorney's office, it is therefore illegal and void. The state's attorney is in a sense a county officer. He receives certain fees, fines and forfeitures and is by law required to account therefor, or for certain portions thereof, to certain county officers whose accounts county boards have the undoubted right to investigate and it therefore necessarily follows that county boards must have the authority to investigate his office to learn whether he has received all that he ought to collect and has paid over all that he is required to so account for.

The decree of the Circuit Court is affirmed.

*Affirmed.*