Points decided.

[Argued November 30, 1892; decided January 16, 1893.]

# *JOHN BURNETT *v.* J. R. MARKLEY ET AL.

[ S. C. 31 Pac. Rep. 1050.]

1. COUNTY COURT — COUNTY BUSINESS — CODE, § 896, SUB. 9.— Under the general power to manage county business conferred on county courts by subdivision 9, of section 896, Hill's Code, those courts have authority to procure for the use of the assessor present-ownership books of all the property in the county, and to employ competent persons to prepare such books.

2. COUNTIES — LIMITATION TO INDEBTEDNESS — STATE CONSTITUTION — ARTICLE XI.— The limit to county indebtedness provided by section 10, of article XI. of the state constitution, does not apply to debts and liabilities imposed upon the county by law, and which it is powerless to prevent; but applies only to liabilities voluntarily created. *Grant Co.* v. *Lake Co.* 17 Or. 453, cited and approved.

3. EXCEPTION IN STATUTE — PLEADING.— In counting on a statute or contract, an exception therein must be negatived, or the pleading will be bad: thus where a constitution provides that "no county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion; but the debts of any county at the time this constitution takes effect shall be disregarded in estimating the sum to which such county is limited," and a suit is brought to restrain the payment of an indebtedness incurred after the adoption of the constitution, and after the county was already in debt beyond the constitutional limit, the complaint must allege that the indebtedness already accrued was not for any of the excepted purposes.

Benton County: MARTIN L. PIPES, Judge.

Suit in equity by John Burnett, a taxpayer and resident of Benton County, Oregon, against J. R. Markley and Harry Dunstan, partners as Markley & Dunstan, and Benton County, and M. P. Burnett, as treasurer of such county, for an injunction to prevent Markley & Dunstan from collecting, and M. P. Burnett from paying, certain county warrants.   Margery B. Davisson, Florence Davisson and Mary D. Wyatt, as the owners of some of the warrants in controversy, were permitted to intervene. A demurrer to the complaint was overruled and plaintiff

*NOTE.—A motion for rehearing was filed in this case, but was withdrawn by plaintiffs on their own request, by permission of the court.— REPORTER.

had a decree as prayed, from which defendants appeal. Reversed.

*J. R. Bryson*, and *W. S. Hufford ( L. Flinn* on the brief), for Appellants.

*John Burnett, in pro per.*, and *John Kelsay*, for Respondent.

This is a suit in equity to enjoin the county treasurer of Benton County from paying certain county warrants issued by the county in favor of defendants Markley & Dunstan, and comes here on appeal from a judgment of the court below overruling a demurrer to the complaint. The substance of the complaint is, that on July 3, 1890, the county court of Benton County, in the name of and on behalf of the county, entered into a pretended contract with one Markley and one Henry Dunstan, by the firm name of Markley & Dunstan, to make out a description of real estate for tax rolls, to make out and copy into the books to be furnished by the county for that purpose a complete list of all the real estate in Benton county, Oregon, arranged in its order into lots, blocks, sections, townships and ranges, giving the present owners of each tract, lot, or parcel so set forth, and giving a complete and accurate description of the same as per the deeds therefor; and providing that said Benton county should pay said Markley & Dunstan therefor and upon the completion of said work, $700, and one per centum of the assessed valuation of all real estate so listed, which is not on the tax roll for 1889 for said county, now in the sheriff's hands, said assessed values to be the values upon which taxes are levied for the year 1890, after equalization and all indebtedness deducted; that after this work was completed, and on the fourth day of December, 1890, the said county did, without authority of law, make and enter an order ordering and adjudging that the said Markley & Dunstan be allowed and paid the sum of $7,219.87 for pretended services claimed to have been

rendered by said Markley & Dunstan to said county under said pretended contract of July, 1890; that on or about the — day of December, 1890, the county clerk, under said order of the said county court, issued to said Markley & Dunstan county orders for said $7,219.87; that on or about the — day of December, 1890, said county orders were presented to said county treasurer, and by him endorsed "Not paid for want of funds"; and it is further alleged that said pretended contract and order of said county court of July 3, 1890, and also the order of December 4, 1890, of said court, is illegal and void for the following reasons: *First*, said county court had no authority whatever under the statute to make said pretended contract; *second*, it was an attempt to provide for the making of an assessment roll in a different way from that provided by the statute, and at an exorbitant cost to the county; *third*, that when the said pretended contract and orders were made the county was indebted in the sum of $40,000, created by said county; *fourth*, that by said pretended contract and said orders, said county created an additional indebtedness and liability of over $7,000 against said Benton County in violation of section 9, article XI. of the constitution of the state of Oregon; that said defendants Markley & Dunstan are threatening to collect said orders, and that said defendant, the treasurer of Benton County, is threatening to pay said county orders and will pay the same out of the county treasury of Benton County unless restrained by order of this court.

BEAN, J. (after stating the facts).—The contention for plaintiff is, that the action of the county court in making the contract with Markley & Dunstan as alleged, and in issuing the warrants in their favor, is void, because,—*first*, the county court had no authority under the law to make such a contract; and, *second*, it imposed a debt or liability upon the county in excess of the constitutional limit.

1.  In support of the first position, it is argued that

since it is made the duty by law of the assessor of the
county to make out on an assessment roll a list of all the
taxable property in his county, that the county court has
no power or authority to employ any other person to
prepare or assist in the preparation of such a list. But
it seems to us that as the county. court is expressly
charged with "the general care and management of the
county property, funds, and business" (Code, § 896), it
may take such measures to secure a full, complete and
accurate list of all the assessable property in the county,
for the use of the assessor, as in its judgment may seem
advisable or necessary. It is the "business" of the
county, through its officers and agents, to see that all the
property within the county liable to assessment and tax-
ation, is placed upon the assessment roll, so that the
burdens of government may fall in like proportion upon
all; and it is a matter of common knowledge, that under
our present system of listing and assessing property, it
is practically impossible for the assessor to list and
assess all the property in his county without some such
aid as was to be provided by the contract in question
here. There was no attempt by the county court by this
contract to usurp or interfere with the duties of the
assessor; but, on the other hand, the object was to pro-
vide a present-ownership list to assist him in the dis-
charge of the duties of his office, and enable him to list
and assess a large amount of real estate which had there-
tofore escaped taxation, amounting in value, as the record
discloses, to over six hundred and fifty thousand dollars.
We think therefore the contract in question was such an
one as the county had power and authority to make.

2. By section 10 of article XI. of the constitution, it
is provided that "no county shall create any debts or
liabilities which shall singly or in the aggregate exceed
the sum of five thousand dollars, except to suppress in-
surrection or repel invasion; but the debts of any county
at the time this constitution takes effect shall be disre-
garded in estimating the sum to which such county is

limited." This provision of the constitution has been before this court for construction in two cases. In *Grant County* v. *Lake County*, 17 Or. 453 (21 Pac. Rep. 447), it was held that it did not apply to debts and liabilities imposed upon the county by law, such as the salaries of the officers, the expenses of holding courts, and such other outlays as the law charges upon a county, and which it is powerless to prevent; but that it "only applies to debts and liabilities which a county in its corporate capacity, and as an artificial person, voluntarily creates"; and this construction was again recognized in *Wormington* v. *Pierce*, 22 Or. 606 (30 Pac. Rep. 450). This provision of the constitution was designed to prevent a county from voluntarily creating debts or liabilities which singly or in the aggregate exceed the sum of five thousand dollars, but has no application to debts or liabilities thrust upon a county by operation of law, and which it can in no way prevent; nor does it apply to debts or liabilities incurred in the suppression of an insurrection or to repel an invasion; nor shall the debts of a county at the time the constitution took effect be included in estimating the amount of its liabilities under this provision of the constitution. Hence, before it can be said that a county has exceeded the constitutional limit of indebtedness, it must appear that the debts have been voluntarily created by the county in its corporate capacity since the constitution took effect, and such debts were not created for the purpose of suppressing an insurrection or repelling an invasion.

3. These necessary facts are not alleged in the complaint in this case. The allegation is that "the county was indebted in the sum of forty thousand dollars, created by the county," but it does not appear whether such indebtedness was voluntarily created, or was thrust upon the county by operation of law, or whether it was incurred in the suppression of an insurrection or to repel an invasion, or whether it was an indebtedness of the county at the time the constitution took effect; and in the

absence of such allegations, the complaint does not state a case within the provisions of the constitution, and the demurrer should have been sustained:  18 Am. & Eng. Enc. 502, 570.

The decree must therefore be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[ Argued Jan. 11, decided Jan. 30; rehearing denied March 13, 1893.]