Argued March 25, affirmed June 2, 1914.

## WINGATE v. CLATSOP COUNTY.*

(142 Pac. 561.)

Counties — Indebtedness — Constitutional Limitation — Voluntary Indebtedness"—"Involuntary Indebtedness."

1. Within the rule that Article XI, Section 10 of the Constitution, limiting the debts which a county may create, extends only to voluntary indebtedness; "voluntary indebtedness" is one which a county may evade or postpone till means are provided for the payment of the expenses incident thereto, and an "involuntary indebtedness" is one imposed by law, which the county may not evade or postpone.

Counties—Debts—Constitutional Limitation.

2. Article I, Section 32 of the Constitution, requires all taxation to be equal and uniform. Article IX, Section 1, requires the legislative assembly to provide by law for uniform and equal rate of assessment and taxation, and to prescribe such regulations as shall secure a just valuation. Section 937, L. O. L., makes the county court the financial business agent of the county. Section 3586 requires the assessor to assess all taxable property and lands at their true cash value. *Held*, that an expenditure incurred by the county court in cruising timber land for the purpose of assessment for taxation, which could not be made equitably by the assessor without assistance, is not a voluntary indebtedness of the county such as is prohibited by Article XI, Section 10 of the Constitution.

[As to claims against counties and the effect of allowance or rejection of them, see note in 55 Am. St. Rep. 203.]

Counties—County Board—Powers.

3. Under Section 937, L. O. L., giving the county court authority to transact county business, it may, unless prohibited by law, adopt such means as in its judgment shall be expedient in assisting the county officers properly to discharge the duties of their offices.

*As to the creation of indebtedness by county within meaning of debt limit provision, see note in 37 L. R. A. (N. S.) 1058.

REPORTER.

From Clatsop: JAMES U. CAMPBELL, Judge.

This is a suit by G. Wingate against Clatsop County, Oregon, Edward C. Judd, County Judge, Fred H. Moore and John Frye, County Commissioners of Clatsop County, Oregon, and the Nease Timber Company, The lower court rendered a decree in favor of defendants and plaintiff appeals. The facts disclosed are set forth in the opinion of the court.    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Snow & McCamant,* with an oral argument by *Mr. Wallace McCamant.*

For respondent, Nease Timber Co., there was a brief over the names of *Mr. H. B. Beckett* and *Messrs. Wilbur & Spencer,* with an oral argument by *Mr. Beckett.*

For respondent, Clatsop County, there was a brief. and an oral argument by *Mr. George C. Fulton.*

Department 2.    MR. JUSTICE McNARY delivered the opinion of the court.

Displeased at the action of the county court of Clatsop County in entering into an agreement with the Nease Timber Company to cruise and estimate the value of the timber lands in the county and in executing a contract for the construction of a jail therein, plaintiff brings this suit to enjoin the county court from approving any claims created thereby in excess of $5,000, upon the hypothesis that the expenditure of the county funds in excess of that sum is in violation of Article XI, Section 10, of the state Constitution. On March 16, 1913, the assessor of that county invited the attention of the county court to the statement that timber lands to the value of many

millions of dollars were eluding taxation, and that it was impossible to ascertain the value of the lands for assessment purposes without having the lands properly cruised and a record made thereof. Upon receipt of this information, the county court made an examination of the subject to which its attention had been directed, and estimated that the timber lands of the county were undervalued at least $46,000,000, and that it was unjust to the owners of other property in the county that such timber lands should escape the burden of government, and thereupon entered into a contract with the Nease Timber Company to have the timber lands cruised. The salient features of the contract provide that the cruising company should make a careful, complete, and thorough cruise and estimate of the timber on the surveyed lands of the county, which would cruise not less than 2,000,000 feet, board measure, sawlogs, or not less than 200,000 lineal feet of piling to each section of land, save such lands as the county court should, from time to time, withdraw from the contract. The company agreed to make reports containing a topographic sketch showing the elevation of the land above sea level, taken by means of aneroid barometers; also, showing all openings, clearings, burns, marshes, rivers, lakes, creeks, trails, roads, waterfalls, valuable stones, mineral outcroppings, and all other topographic features observed by the cruisers, including a general description of the land cruised, describing its adaptability for agriculture, grazing, or other purposes after the removal of the timber; the character of the different varieties of the timber, giving the average stump diameter; the average number of 16-foot logs per tree; the percentage of surface clear timber; also a description of the logging conditions, showing the distance to

outlets such as railroads or driving streams; damage by fire or otherwise, or the probability of fire; and furnish all blue-prints, blanks, and binders. In consideration of the faithful performance of the contract upon the part of the Nease Timber Company, the county court agreed to pay 12½ cents per acre for all land cruised and reported by the company, and accepted and approved by the county. It is alleged in the answer of the defendant county that when the cruise shall have been completed, the property now and heretofore assessed at a value of not to exceed $4,000,000 will be truly and properly assessed and valued on the assessment-roll at a sum in excess of $50,000,000, thereby increasing the assessable and taxable property of the county from about $10,000,000 to at least $55,000,000. Further, it is alleged, and much competent proof was offered in support thereof, that a goodly part of the lands sought to be cruised are remotely situated from highways, being practically inaccessible to persons other than woodsmen, and wholly uninhabited, the lands being overgrown with underbrush, which condition renders the work of cruising insuperable to the assessor. On the 17th day of September, 1913, the trial court entered a decree dismissing plaintiff's complaint, and from that action this appeal is taken.

Counsel agree that the pre-eminent question sought to be determined is whether the contract executed by the county created a voluntary indebtedness, and therefore within the prohibition of the Constitution. Article XI of Section 10 of the Constitution as amended by Laws of 1911, page 11, provides:

"No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum

of five thousand dollars, except to suppress insurrection or repel invasion, or to build permanent roads within the county, but debts for permanent roads shall be incurred only on approval of a majority of those' voting on the question.''

1. This provision of the Constitution has been subjected to judicial determination many times, and with uninterrupted harmony of expression and thought this court has held that the constitutional inhibition only extends to voluntary indebtedness, and not to such as is thrust upon the county by operation of law. Enlarging the subject, it may be said that a voluntary indebtedness is one which a county is at liberty to evade or postpone until means are provided for the payment of the expenses incident thereto, while an involuntary indebtedness is a liability imposed upon a county by law, and which it is not privileged to evade or postpone: *Grant County* v. *Lake County,* 17 Or. 453 (21 Pac. 447); *Wormington* v. *Pierce,* 22 Or. 606 (30 Pac. 450); *Burnett* v. *Markley,* 23 Or. 436 (31 Pac. 1050); *Municipal Security Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174); *Eaton* v. *Mimnaugh,* 43 Or. 465 (73 Pac. 754); *Brix* v. *Clatsop County,* 46 Or. 223 (80 Pac. 650); *Brockway* v. *Roseburg,* 46 Or. 82 (79 Pac. 335); *Cunningham* v. *Umatilla County,* 57 Or. 519 (112 Pac. 437, 37 L. R. A. (N. S.) 1051); *Bowers* v. *Neil,* 64 Or. 104 (128 Pac. 433).

2. Correctly to determine the character of the indebtedness created by reason of the contract sought to be enjoined, we must turn our attention to the duties imposed upon those responsible for the contract. The organic law of our state reads that all taxation shall be equal and uniform. Section 32 of Article I of the Constitution. In order to insure uniformity of assessment and taxation the Constitution embodies

that obligation in Section 1 of Article IX of the Constitution:

"The legislative assembly shall provide by law for uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

The architects and builders of the Constitution wisely saw that social stability was impossible without an equitable distribution of the burden of civil government, and, to avoid the ruinous consequences of inequitable taxation, imposed upon the legislature the enactment of such laws as would render taxation equal and uniform.

3. Answering this paramount injunction, the legislature, by force of Section 937, L. O. L., appointed the county court the financial business agent of the county, charged with the care and management of the county property, funds, and business, and to fulfill that purpose the fiscal agent may, unless prohibited by law, adopt such means as in its judgment shall be expedient in assisting the county officers properly to discharge the duties of their office: *Taylor* v. *Umatilla County,* 6 Or. 394; *Burness* v. *Multnomah County,* 37 Or. 472 (60 Pac. 1005); *State ex rel.* v. *Hall,* 37 Or. 479 (63 Pac. 13).

In the case of *Burnett* v. *Markley,* 23 Or. 436 (31 Pac. 1050), Mr. Justice ROBERT S. BEAN well said:

"It is the 'business' of the county, through its officers and agents, to see that all the property within the county liable to assessment and taxation, be placed upon the assessment-roll, so that the burdens of government may fall in like proportion upon all."

Section 3586, L. O. L., requires that the assessor, after qualifying, shall proceed and assess all taxable property within his county, and that all lands shall be valued at their true cash value, taking into consideration the improvements on the land, etc. We think the testimony forcibly shows that it was impossible for the assessor with any degree of accuracy to list and assess the timber in the "continuous woods where rolls the Oregon," on account of the impenetrable character of the forests, the lack of essential knowledge for an undertaking of that kind, and the want of suitable equipment; and in consequence thereof, a statutory duty devolved upon the county court, as the business agent of the county, to take such means as its judgment would suggest more equitably to apportion the toll of taxation which mankind has paid through the flight of centuries as the costs of civilized society. While absolute uniformity and exact equality of taxation is a baseless dream, in view of the imperfections of humanity, yet approximation is not unattainable. Therefore a supreme duty rested upon the agencies of the county government to make each citizen pay in proportion to his financial strength. So if it conclusively appeared to the county court that uniformity in taxation could not be reached without the execution and performance of the contract in hand, it became its plain duty to cause the timber to be cruised, in view of the constitutional mandate, for no act would be more violative of the fundamental law of the state than to tolerate a scheme of taxation which would rest lightly upon one and press heavily on another, irrespective of valuation or quantity of property. In the case of *Eaton* v. *Mimnaugh*, 43 Or. 473 (73 Pac. 754), this court with propriety held that the legislature could no more impose a debt on the county

by legislative enactment than the county could vol-
untarily assume it as against the disability of a con-
stitutional prohibition. But that is not this case.
While the county court did not enter into the contract
under the directions of any particular legislative be-
hest, save as guardian of the county's interests, yet,
the statute clothing the court with its duties and re-
sponsibilities finds its root in the Constitution, which
requires uniformity and equality of assessment and
taxation. Considered from this vantage ground, the
court was acting in response to the dictates of the
Constitution as expressed through legislative enact-
ment.

The case before us is strikingly similar to that of
*Burnett* v. *Markley*, 23 Or. 436 (31 Pac. 1050), the
facts of which disclose that the county court of Benton
County entered into a contract for the preparation of
present ownership books to facilitate the assessor in
listing the property of his county. In upholding the
contract, the court said:

"It is a matter of common knowledge that under
our present system of listing and assessing property,
it is practically impossible for the assessor to list
and assess all the property in his county without some
such aid as was to be provided by the contract in
question here. There was no attempt by the county
court by this contract to usurp or interfere with the
duties of the assessor; but, on the other hand, the ob-
ject was to provide a present ownership list to assist
him in the discharge of the duties of his office, and en-
able him to list and assess a large amount of real es-
tate which had heretofore escaped taxation, amount-
ing in value, as the record discloses, to over $650,000.
We think, therefore, the contract in question was such
a one as the county had power and authority to make."

To obey the mandates of the Constitution as ex-
pressed through statute, and fairly to distribute the

burdens of government, is a duty that admits of no evasion, and the expenditures necessary therefor are such in character as to create an involuntary indebtedness, stationed without the pale of the constitutional inhibition.

The learned counsel for appellant complains of the court's refusal to grant a permanent injunction against the construction of the county jail, urging the same constitutional disability invoked against the contract with the Nease Timber Company. The records of Clatsop County unfold that the county court, at its term in January, 1913, made provision for a special tax to be levied upon the taxable property in the county, amounting to $15,000, to be used in the construction and furnishing of a county jail, a special fund being thereby created. It is conceded that the amount of money the county proposes to expend for the construction of the jail does not exceed the amount of the appropriation.

From a collation of the best judicial thought before us, we are brought to the conclusion that, where a fund has been provided for, although not collected, or where an appropriation has been made of anticipated revenue, and the contract is payable out of such funds, the contract does not create an indebtedness within the meaning of the Constitution. This view seems to be in accord with the decisions of this state as exemplified in *Municipal Security Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174) ; *Eaton* v. *Mimnaugh,* 43 Or. 465 (73 Pac. 754) ; *Bowers* v. *Neil,* 64 Or. 104 (128 Pac. 433). Inevitably from these conclusions the decree of the lower court must be affirmed.        AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.