## VON ROSENBERG et al. v. LOVETT.
(No. 5391.)

(Court of Civil Appeals of Texas. Austin. Dec. 2, 1914. Rehearing Denied Jan. 20, 1915.)

1. COUNTIES ⊚⟳47—COMMISSIONERS' COURTS —POWER OF.

Under Const. art. 5, § 18, creating commissioners' courts, and conferring upon them the powers granted by the Constitution and laws, the commissioners' courts are courts of limited jurisdiction, having no authority except such as is expressly or impliedly conferred.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 55; Dec. Dig. ⊚⟳47.]

2. TAXATION ⊚⟳315—TAX FERRETS—POWERS OF GOVERNMENTAL FUNCTIONS.

As the duty to discover and place on the assessment rolls omitted personal property is not placed upon any officer, such duties are not governmental functions and may be performed by individuals.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 521, 831; Dec. Dig. ⊚⟳315.]

3. TAXATION ⊚⟳315 — ASSESSORS — DELEGATION OF AUTHORITY TO ASSISTANTS.

A contract, whereby the commissioners' court engaged individuals to perform the duties of the assessor, is not open to objection that the court could not by contract clothe another with governmental functions, as Rev. St. 1911, art. 7560, authorizes the court, in case of the assessor's failure, to employ other persons to perform his duties.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 521, 831; Dec. Dig. ⊚⟳315.]

4. TAXATION ⊚⟳336—ASSESSMENT—DUTIES OF ASSESSOR.

As it is the general duty of assessors only to assess property rendered for taxation, an assessor is not bound to search for personal property not rendered for taxation, despite Rev. St. 1911, art. 7566, providing that he shall, upon discovering any personal property not assessed or rendered for taxation, list the same.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 565, 567, 569, 570; Dec. Dig. ⊚⟳ 336.]

5. TAXATION ⊚⟳315—ASSESSMENT—TAX FERRETS.

As Acts 29th Leg. c. 130, relates exclusively to the taxation of real estate, it does not authorize the commissioners' courts to engage tax ferrets to discover omitted personal property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 521, 831; Dec. Dig. ⊚⟳315.]

6. TAXATION ⊚⟳315—ASSESSMENT—TAX FERRETS.

The enactment of Acts 29th Leg. c. 130, authorizing the commissioners' courts to employ tax ferrets to discover omitted real property, does not show that the commissioners' courts were without power to employ tax ferrets to discover omitted personal property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 521, 831; Dec. Dig. ⊚⟳315.]

7. TAXATION ⊚⟳315—ASSESSMENT—TAX FERRETS—POWER OF COMMISSIONERS' COURTS— "INSPECT"—"SUPERVISE."

Const. art. 8, § 1, declares that all property in the state shall be taxed in proportion to its value. Rev. St. 1911, art. 7564, provides that the commissioners' courts shall receive the assessment lists or books of the assessor for inspection, correction, equalization, and approval. Article 7570 makes it the official duty of the

board of equalization to supervise the assessment of their respective counties. Final Title, § 3, declares that the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application, but that the Revised Statutes shall be liberally construed with an effort to effect justice. *Held*, that the commissioners' courts, which constitute the boards of equalization, may engage tax ferrets to ascertain omitted personal property; for they are given power to "inspect" the assessor's books, which means to ascertain whether he has included in his lists all property subject to taxation, and are authorized to "supervise"—that is, to oversee—the assessment.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 521, 831; Dec. Dig. ☞315.

For other definitions, see Words and Phrases, First and Second Series, Inspect; Supervise.]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by W. H. C. Lovett against William Von Rosenberg and others. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

John E. Shelton and E. C. Gaines, both of Austin, for appellants. Fiset, McClendon & Shelley, of Austin, for appellee.

## Statement of the Case.

JENKINS, J. The suit arose out of a petition for injunction, and is based on the power of the commissioners' court of Travis county to make the following contract:

"State of Texas, County of Travis.

"Know all men by these presents: That this contract and agreement, entered into this day by and between the county commissioners' court of Travis county, Tex., party of the first part, and J. Gregg Hill, W. R. Long and J. W. Maxwell, parties of the second part, witnesseth:

"That said parties of the second part agree to point out to the tax assessor of Travis county, Tex., personal property which the owner or owners, or their legal representatives have either failed or refused to assess their taxes for the year 1912, or years prior thereto and such property is not on the county tax rolls and have never been discovered or found by the said tax assessor of Travis county and placed on said rolls.

"That said parties of the second part further agree to furnish such proof to the said tax assessor that such personal taxes should be legally assessed and taxes collected thereon for 1912 or prior years.

"For and in consideration of the services rendered by the said Hill, Long and Maxwell, as hereunto stated the commissioners' court of Travis county, Tex., hereby agree to pay the said Hill, Long and Maxwell, parties of the second part, a fee of twenty-five (25) per cent. of the full amount of the county taxes actually collected on such personal property as has been pointed out by them and assessed as hereinbefore stated.

"And the said Hill, Long and Maxwell are hereby authorized to file suit in any court of competent jurisdiction in Travis county, Tex., to enforce the payment of any such personal taxes so assessed.

"It is expressly agreed and understood that this contract shall not apply to any assessment of personal property placed on the assessment roll by the tax assessor of Travis county up to the date of the meeting of the commissioners' court as a board of equalization, but to all personal taxes placed on said roll after said date.

It is expressly agreed and understood that the county commissioners' court shall have the right to contract with any person or firm for the collection of the taxes on personal property not heretofore rendered for taxes where the same is discovered in any other county of this state or any other state.

"This contract shall be in force for two years from the date hereof. Witness our hands at Austin, on this the 13th day of May, 1912," etc.

Omitting formal parts, appellee's petition reads as follows:

"Your petitioner, W. H. C. Lovett, hereinafter styled plaintiff, complaining of Wm. Von Rosenberg, county judge of Travis county, Tex., Tom Anderson, county commissioner of precinct No. 1, Travis county, Tex., W. L. Dodgen, county commissioner precinct No. 2, Travis county, Tex., R. E. Barker, county commissioner precinct No. 3, Travis county, Tex., Calvin Hughes, county commissioner precinct No. 4, Travis county, Tex., J. Gregg Hill, W. R. Long, J. W. Maxwell, and E. C. Gaines, hereinafter styled defendants, respectfully represents:

"(1) That the plaintiff is a resident of Travis county, Tex. That the defendant Wm. Von Rosenberg is the county judge of Travis county, Tex., and as such is a member of and presiding officer of the commissioners' court of Travis county, Tex. That the defendants Tom Anderson, W. L. Dodgen, R. E. Barker, and Calvin Hughes are county commissioners of precincts Nos. 1, 2, 3, and 4, respectively, in Travis county, Tex., and the said judge and the said commissioners constitute the commissioners' court of Travis county, Tex.; and they are sued herein in their said official capacities, together with their successors in office. That all of the defendants herein reside in Travis county, Tex.

"(2) That the plaintiff is, and has been for many years prior hereto, a bona fide resident and citizen of Travis county, Tex. That he is, and has been for many years, a qualified voter in said county, and owns real estate and other property in said county, upon which he pays state and county taxes in said county, and that he is interested in the subject-matter of this suit and has a right to institute the same.

"(3) That heretofore, to wit, on or about the 13th day of May, A. D. 1912, the commissioners' court of Travis county, which was then composed of R. E. White, county judge, and the following commissioners, Tom Anderson, W. L. Dodgen, R. E. Barker, and Jack Booth, who were commissioners respectively of precincts Nos. 1, 2, 3, and 4, entered into a certain purported contract with the defendants herein J. Gregg Hill, W. R. Long, and J. W. Maxwell, whereby the said Hill, Long, and Maxwell agreed to point out to the tax assessor of Travis county, Tex., personal property which the owner or owners or their legal representatives have either failed or refused to assess their taxes for the year 1912, or years prior thereto; such property not being on the county tax rolls and never having been discovered or found by the said tax assessor of Travis county and placed on said rolls. And said Hill, Long, and Maxwell further agreed to furnish such proof to such tax assessor that such personal taxes should be legally assessed and taxes collected thereon for 1912 or prior years, and that, in consideration for such service, the said commissioners' court of Travis county, Tex., agreed to pay to the said Hill, Long, and Maxwell the sum of 25 per cent. of the full amount of the county taxes actually collected on such personal property as might be pointed out by them and assessed as in said contract provided. And the said Hill, Long, and Maxwell were further authorized to file suit in any court of competent jurisdiction in Travis county, Tex., to enforce

the payment of any such personal taxes so assessed. But it was provided that such contract should not apply to any assessment of personal property placed on the assessment roll of the tax assessor of Travis county up to the date of the meeting of the commissioners' court as a board of equalization, but to all personal taxes placed on said roll after said date, and, further, that the county commissioners' court should have the right to contract with any person or firm for the collection of taxes on personal property not theretofore rendered for taxes, where the same is discovered in any other county of this state or any other state, and that said contract should remain in full force for two years from the date thereof; that said contract was attempted to be executed by the said parties thereto and was attempted to be ratified, confirmed, and made valid by an order of said county commissioners' court, spread upon the minutes of said court on the 13th day of May, 1912, which said order is order No. 868 and a true and correct copy thereof, together with a true and correct copy of said purported contract, are hereto attached, marked 'Exhibit A,' and hereby made a part of this petition for all purposes.

"(4) Your petitioner further says that the defendant herein E. C. Gaines has acquired some right or interest in said purported contract, the exact nature and character of which is not known to your petitioner, but is well known to the defendants.

"(5) That, after the execution of said purported contract, the said defendants, Hill, Long, Maxwell, and Gaines, did present certain properties to the said tax assessor and said commissioners' court, after the date of the meeting of the said commissioners' court as a board of equalization as provided in said purported contract, which said taxes have been regularly assessed on personal property against residents and citizens of Travis county, Tex., that 25 per cent. of the amount of said taxes so assessed aggregates the sum of $3,064.02, and that of said amount of taxes so assessed there has been collected an amount, 25 per cent. of which aggregates the sum of $827.04, and that said sum of $827.04 has been paid over to the defendants Hill, Long, Maxwell, and Gaines; that the aforesaid present commissioners' court of Travis county, Tex., recognizes said purported contract as a valid, subsisting, and binding obligation upon said court and upon the county of Travis, and are proceeding to collect the remainder of said taxes, and will, unless restrained, pay over to the said defendants Hill, Long, Maxwell, and Gaines 25 per cent. of such taxes as are collected in compliance with the terms of said purported contract.

"(6) That the said purported contract is absolutely void and unenforceable, in that same was beyond the power of the commissioners' court of Travis county, Tex., and was illegal, and it was not within the power or jurisdiction of said county commissioners' court of Travis county, Tex., to make any agreement to pay over to the defendants or any other person any percentage of taxes collected on unrendered personal property, or any other sum in consideration for the services agreed to be performed by said defendants Hill, Long, and Maxwell in said purported contract. But all the duties and services agreed to be performed in said purported contract are duties and obligations by law imposed upon the tax collector, tax assessor, commissioners' court, and county attorney.

"(7) That, as aforesaid, your petitioner is a bona fide resident citizen, qualified voter, and taxpayer of the said Travis county, Tex., and is interested in the disposition of the county funds and the proceeds of the aforesaid taxes to be collected from personal property. That, if the defendants are not enjoined and restrained from paying out and receiving 25 per cent. of the proceeds of such taxes as were assessed as

aforesaid under the provisions of said purported contract and have not been paid, then the said sums will be paid out by said commissioners' court as aforesaid, and said sums will be lost to the said county and the taxpayers thereof, and great and irreparable injury will be done to said county, the taxpayers thereof, and your petitioner in particular, and your petitioner has no adequate remedy at law.

"Wherefore your petitioner prays that a temporary injunction be granted your petitioner, enjoining and restraining the aforesaid county judge and county commissioners in their aforesaid official capacities as members of the county commissioners' court of Travis county, Tex., from paying over to the said defendants Hill, Long, Maxwell, and Gaines, or any of them, any further sum or sums upon said purported contract during the continuance of this suit, and that upon final hearing hereof said injunction may be made perpetual and said purported contract be declared null, void, and of no force and effect, and that citation issue to the defendants and each of them, commanding them to appear and answer in this cause, and that, in addition to the relief hereinbefore prayed for, your petitioner have such other and further relief, general and special, legal and equitable, as he may appear entitled to, and that he recover his costs."

The defendant E. C. Gaines filed an answer showing that he had acquired no interest whatever in said contract, and that his only connection with the same was in the capacity of attorney before the board of equalization, in this suit, for a definite fee, and the defendant J. W. Maxwell filed a disclaimer, and the suit against Maxwell and Gaines was thereupon dismissed.

The other defendants answered by a general exception only, which the court overruled, and declining to answer further, and admitting that the facts were in their legal effect substantially as alleged in the petition, the court entered a judgment perpetuating the injunction as prayed for.

### Opinion.

It is the contention of appellants: (1) That the commissioners' court had express authority to make the contract above set out. (2) That it had implied authority so to do.

[1] The laws of this state bearing most directly, as we think, upon the questions at issue, are:

Section 18, art. 5, of the Constitution, which creates the commissioners' courts, and confers upon them such powers as are granted by the Constitution and the laws of this state.

Section 18, art. 9, of said Constitution, which constitutes commissioners' courts boards of equalization for their respective counties.

Article 7564, R. S., which reads in part as follows:

"Boards of Equalization. The commissioners' courts of the several counties of this state shall convene and sit as boards of equalization on the second Monday in May of each year, or as soon thereafter as practicable before the first day of June, to receive all the assessment lists or books of the assessors of their counties for inspection, correction or equalization and approval. (1) They shall cause the assessor to bring be-

fore them at such meeting all said assessment lists, books, etc., for inspection, and see that every person has rendered his property at a fair market value, and shall have power to send for persons, books and papers, swear and qualify persons to ascertain the value of such property and to lower or raise the value on the same. (2) They shall have the power to correct errors in assessments. (3) They shall equalize improved lands in three classes, first class to embrace the better quality of lands and improvements, the second class to embrace the second quality of lands and improvements, and the third class to embrace lands of but small or inferior improvements. The unimproved lands shall embrace first, second and third class, and all other property made as nearly uniform as possible. (4) After they have inspected and equalized as nearly as possible, they shall approve said lists or books and return same to the assessors for making up the general rolls, when said board shall meet again and approve the same, if same be found correct."

Article 7570, which reads in part as follows:

"The boards of equalization shall have power, and it is made their official duty, to supervise the assessment of their respective counties."

Other portions of our statute relative, or claimed to be relative, to the issue involved herein, will be referred to in subsequent portions of this opinion.

Commissioners' courts in this state, as will be seen from the above references to our Constitution, are courts of limited jurisdiction, having no authority, except such as is expressly or impliedly conferred upon them by law. This is true of like bodies, by whatever name called, in all other states of the Union.

The issues presented in this case have not been passed upon by the courts of this state, but the exact or similar questions have been decided by the courts of last resort in other states, under statutes sufficiently similar to ours to constitute such decisions authority in the instant case.

It is conceded by appellee that the decisions of the Supreme Court of Iowa uphold the contention of the appellants as to the implied power of the commissioners' court to make the contract above set out. See Disbrow v. Board of Com'rs, 119 Iowa, 538, 93 N. W. 585; Shinn v. Cunningham, 120 Iowa, 383, 94 N. W. 941; Wilhelm v. Cedar County, 50 Iowa, 254. To the same effect is Fleener v. Litsey, 30 Ind. App. 399, 66 N. E. 82; Garrigus v. Board of Com'rs, 157 Ind. 103, 60 N. E. 948; Richmond v. Dickinson, 155 Ind. 345, 58 N. E. 260; Wayne County v. Dickinson, 153 Ind. 682, 53 N. E. 929; Martin v. Whitman County, 1 Wash. 533, 20 Pac. 599; Burnett v. Markley, 23 Or. 436, 31 Pac. 1050; State v. Hall, 37 Or. 479, 63 Pac. 13; Blades v. Hawkins, 240 Mo. 187, 112 S. W. 979, 144 S. W. 1198, Ann. Cas. 1913B, 1082; Prothero v. Com'rs, 22 Idaho, 598, 127 Pac. 175; Harris v. Gibbins, 114 Cal. 418, 46 Pac. 292.

As to the public policy of such contracts, the court, in Disbrow v. Com'rs, supra, said:

"The purpose of the contract in question is commended, to say the least. Its clearly expressed purpose is to aid the county in its search for property which has been omitted from taxation, and to assist in collecting the amount found due on account thereof."

In Richmond v. Dickinson, supra, the court said:

"Public policy demands that every taxpayer contribute his just proportion to the expenses of government."

That case was very similar to the instant case, in that the appellee was employed to search out and report to the city clerk, whose functions were similar to those of the tax assessor under our statute, property which had been secreted and omitted from the tax rolls, for which he was to be paid a fee equal to 20 per cent. of the amount of taxes collected by reason of his discoveries. It was denied generally that the city council had the power to make such a contract, and specifically for the reason that the services that appellee was employed to perform lay within the official duties of the tax officers of the city. The law made it the duty of the city clerk to assess property for taxation "whenever he shall discover, or receive creditable information or shall have reason to believe that any real or personal property has, from any cause, been omitted, in whole or in part," from the tax roll. In construing this statute, the court held that it was not the duty of the city clerk to hunt for the omitted property. The statute of Indiana empowered common councils "to levy and cause to be assessed and collected in each year an ad valorem tax of not more than one per cent. for general purposes on all property subject to state and county taxation." The court said:

"This general power is worthless, unless it carries with it the right to use means efficient for its enforcement."

The statutes of Idaho made it the duty of the county commissioners to examine and audit the accounts of other county officers. The commissioners employed an expert accountant to examine such accounts. In upholding this action, the court, in Prothero v. Com'rs, supra, said:

"Power to accomplish a certain result, which evidently cannot be accomplished by the person or body to whom the power is granted, without the employment of other agencies, includes the implied power to employ such agencies."

To the same effect, upon a similar state of facts, is Blades v. Hawkins, supra. In the latter case Bland, Chief Justice, dissented upon the ground that the services to be performed by the accountant were specifically imposed by statute on the commissioners' court. Even if he was right in this, it does not weaken the principle announced by the majority of the court. The fact that the commissioners' court cannot, in the absence of a statute specifically authorizing them to do so, confer governmental functions on any one, does not argue that they cannot, in car-

rying out the general purposes for which they were created, employ an agent to do those things which are not the official duty of any officer.

The case of Stevens v. Henry County, 218 Ill. 468, 75 N. E. 1024, 4 L. R. A. (N. S.) 339, 4 Ann. Cas. 136, cited by appellee, rests upon the fact that supervision in the matter of assessment of taxes had by statute been taken from the commissioners' court, called in that state "board of supervisors," and conferred upon another body, called a "board of review," composed of the county treasurer and two others selected for that purpose. The contract was not made by the board of review, but by the board of supervisors, who had nothing to do with the supervision of matters of taxation. The court, in the Stevens Case, supra, rejects the authority of Fleener v. Litsey, Garrigus v. Howard County, Richmond v. Dickinson, and Wayne County v. Dickinson, supra, for the reason that they were based "upon a peculiar statute" of Indiana. This statute limits the power of the commissioners' court to employ any person to perform any duty to be paid for by commission or percentage, which is a legislative recognition that, without such limitation being fixed by statute, the commissioners' court had the implied authority to make the contracts therein forbidden. The contracts in those cases were upheld for the reason that they were not embraced within the restrictions imposed by the statute upon the powers of the commissioners' court.

In Coleman v. Fry, 77 Kan. 540, 95 Pac. 392, 16 L. R. A. (N. S.) 477, a contract similar to the one in the instant case was held void. But the decision rests upon the fact that the statute of Kansas had "assigned the several steps in the system and procedure to designated officers of the townships and counties of the state. It has imposed upon certain officers the very duties which, by the contract in question, the county commissioners undertook to employ Moir to perform." In the case of Pierson v. Minnehaha County, 28 S. D. 534, 134 N. W. 212, 38 L. R. A. (N. S.) 261, the Supreme Court of South Dakota similarly construed the statutes of that state. In that state, as in Illinois, the statute (Pol. Code, § 2075) intrusted the assessment of delinquent taxes to certain named officers, and the commissioners' court appear to have no power of supervision in this matter. The case of Chase v. Com'rs, 37 Colo. 268, 86 Pac. 1011, 11 Ann. Cas. 483, is based upon a statute which imposes the duty and confers the power upon tax assessors to discover, as well as to assess, unrendered property. The court says:

"They are given the power to discover, and furnished with facilities to bring to light, omitted assessable property."

In House v. Los Angeles County, 104 Cal. 73, 37 Pac. 796, the court said:

"We do not, however, base our decision upon the ground that the duties devolving upon respondent are of such a character as called for the exercise of discretion and judgment, but upon the broader ground that, the statute having confided those duties to officers specially designated by law for their discharge, the supervisors have no authority, express or implied, in the premises, and hence that the contract was beyond the jurisdiction conferred upon the board."

In Grannis v. Blue Earth Co., 81 Minn. 58, 83 N. W. 496, wherein a contract similar to the one here in question was held void, the court said:

"The Legislature has provided officers whose duty it is to levy all taxes, officers to cause all property to be properly assessed and placed upon the tax rolls, and officers for the collection of such taxes. The county commissioners, as officers and agents of the county, have no authority over any of these officials with respect to the performance of their duties."

In Platte County v. Gerrard, 12 Neb. 244, 11 N. W. 298, wherein a contract for services to enable the commissioners' court to place upon the tax list certain lands, which had been erroneously omitted therefrom, was held void, the court said that the services contemplated in the contract were within the duties imposed by law upon the commissioners' court. The decision in Frederick v. Douglas County, 96 Wis. 411, 71 N. W. 798, wherein the appellant was employed to perform the duties incumbent upon the district attorney, announces the same principle.

In other words, these cases hold that the statutes of the several states in which these opinions were rendered conferred no express authority upon the respective commissioners' courts to deal with the subject-matter of the contracts involved, and therefore there was no implied power to make such contracts. In the other line of cases above cited, the effect of the decisions therein is that, the power to deal with the subject-matter having been conferred upon the commissioners' court, it would be implied that the Legislature intended to grant them whatever authority was necessary to enable them to properly discharge their duties. In the instant case we hold, for reasons hereinafter stated, that express power is conferred upon commissioners' courts of this state to deal with the matter to which the contract pertained.

[2] We also hold that the duties to be performed under said contract were not such as were specifically required of any officer, and therefore were not governmental functions.

We now proceed to apply the principles annunciated in the cases cited to the statutes of our state.

[3, 4] It is the contention of appellants that the commissioners' court had express authority to make the contract involved herein, by virtue of article 7560, R. S., wherein the commissioners' court are authorized, in the event the assessor fails to perform any of the duties required of him by law, to employ some other person to perform such duties. If it be the official duty of the assessor

to perform the services provided for in said contract, the objection that the commissioners' court could not by contract clothe another with such governmental functions would not apply, for the reason that in such event they would be specially authorized by statute so to do. But we do not think that the services to be performed under the contract are a part of the official duties of the tax assessor. His duty, generally speaking, is to assess property rendered to him for taxation. Article 7566, R. S., requires:

"If he shall discover in his county any property belonging to a resident of the county and (any) personal property which has not been assessed or rendered for taxation every year for two years past he shall list and assess the same," etc.

The services provided for in the contract are shown by the evidence to require that the records of Travis and other counties in the state be searched, involving much labor. We find nothing in the statute requiring the tax assessor to do this work, and no provision made for paying him therefor.

[5] Nor do we agree with appellant that express authority to make the contract is conferred upon commissioners' courts by chapter 130, Gen. Laws of the 29th Legislature, p. 318, for the reason that said act relates exclusively to the taxation of real estate.

[6] Appellee argues that the passage of said chapter 130, empowering the commissioners' court to employ assistants in discovering unrendered real estate, is a legislative construction of our statute, that without such statute no such power existed, and that, if no such power existed as to real estate, it should be held, in the absence of special statute, that it does not exist as to personal property. What the Legislature thought about the matter does not appeal to us with much force, as it is well known that Legislatures frequently enact laws that are simply declaratory of the common law. This is often done for the purpose of making certain the law, which everybody is presumed to know, but which in fact few do know. It may also be said that this chapter is a declaration on the part of the Legislature that it was not, and had not theretofore been, the duty of the tax assessor, nor of the commissioners' court, to do the work therein specified, and, if not as to real estate, it is not as to personal property. The official duties of the tax assessor and of the commissioners' court are enumerated with much detail and particularity, but nowhere in the statute is it made the duty of either of them to ferret out and place, or cause to be placed, upon the tax rolls, unrendered personal property; and, in view of the well-known proclivity of owners of this character of property not to render the same for taxes, it is necessary that this work be done by some one, in order to carry our tax laws into effect. The great variety of duties and the labor involved in the discharge thereof precludes the idea that the commissioners' court are expected to do this work.

[7] In view of the fact that the Constitution authorizes the Legislature to intrust the business affairs of the counties to commissioners' courts, and has created no other body to exercise such management in the general business of counties, section 3 of the Final Title of our Revised Statutes appeals to us with peculiar force when dealing with the implied powers of commissioners' courts. Said section is as follows:

"The rule of the common law that statutes in derogation thereof shall be strictly construed, shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this state respecting the subjects to which they relate, and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

What is "justice" in the matter of taxation? It is that all property shall bear its just proportion of taxes. In the language of the Constitution that:

"All property in this state, whether owned by natural persons or by corporations, * * * shall be taxed in proportion to its value." Article 8, § 1.

It is the "object" of our tax laws to carry into effect this constitutional provision, which accords with the dictates of justice. This cannot be done if the tax dodger is permitted to escape. It has not been made the express duty of any officer to hunt him out. Neither the tax assessor, nor the commissioners' court, nor any other official, is clothed with inquisitorial power in this matter, as is the case in some other states. Has the commissioners' court implied authority to secure the assessment of personal property which the owner has failed to render for taxation? We think so.

Article 7564, supra, provides, among other things, that commissioners' courts shall receive the assessment lists or books of the assessor "for inspection, correction, equalization and approval." Inspection implies the ascertainment of whether or not the assessor has included in his lists all property subject to taxation. As reasonable men, the commissioners are presumed to know what is known by all men, that, unless the assessor has done more than his official duty, a considerable amount of personal property subject to taxation will not appear upon his books. If they have used no means to ascertain and locate such property, the books being otherwise correct, they must of necessity approve the same, though they do not believe them to be correct. The statute makes it their duty, if needs be, to have the assessors' books corrected, and this to the end that the tax laws of the state shall be enforced. As information with reference to unrendered property is necessary to enable them to perform this duty, and as no other means has been provided by law to enable them to obtain such information, we believe that they have the

implied power, under this article of our statutes, to employ some one to ferret out and report the personal property which would otherwise escape taxation. Upon such report being made to the assessor, it would become his duty to assess such property. Article 7566, R. S. And the commissioners, by examining such report in connection with the assessor's books, could determine whether they ought to be corrected, or approved as submitted. The employment of some one to perform the services required under the contract herein is a reasonable means to enable the commissioners' court to discharge the duties imposed upon them by said article 7564, for which reason we hold that they had the implied power to make said contract.

We think that they also had such implied power under article 7570, which makes it the official duty of the board of equalization (commissioners' court) "to supervise the assessment of their respective counties." To supervise does not mean to do the work in detail, but to see that it is done. It means to oversee, with power of direction. To oversee the assessment of taxes is first to ascertain whether or not the assessment has been correctly made, which includes the assessment of all property subject to taxation in the county, and, if any has been omitted, to direct that the same be placed on the books of the assessor. To discharge this duty, they have the power to employ some one to search out and report the personal property subject to taxation, which has not been rendered for taxation. Without this, no other means being provided by law for the ascertainment of such fact, they cannot discharge their duty as supervisors of the assessment of taxes. When the law requires the performance of a duty by any one, it impliedly grants him the power to do the things reasonably necessary to discharge such duty. It would be a vain thing to impose upon any one a duty, and deny him the means whereby he could perform such duty.

For the reasons stated, the judgment of the trial court is reversed; and, as it is admitted that the facts are substantially as alleged in the petition, judgment is here rendered for appellants, dissolving the injunction and dismissing the case.

Reversed and rendered.