# Trimble v. City of Pittsburgh.

*Municipalities—Counties—Cities—Erection of joint county and city building—Act of April 18, 1913, P. L. 96—Ownership—Plan—Proposed use—Employment of constructing engineer—Equity—Injunction.*

1. Under the Act of April 18, 1913, P. L. 96, which provides that where a county seat is within the limits of any city, the county and city authorities may erect a joint county and municipal building, the county commissioners and city authorities to adopt plans therefor, showing the part selected for county and city purposes, respectively, and futher providing that the county and city shall own in severalty the part of the building selected by each, and the land thereunder, the court properly enjoined the erection of a joint building, where the plan showed that certain entire floors of the proposed building were to be used by the city, and certain other entire floors by the county, so that part of the building selected for use by each municipality would not be entirely on the ground owned by it in severalty, but would overlap the ground of the other.

2. Where in such case it appeared that each municipality intended to occupy certain whole floors for its permanent use, there is no merit in the contention that the arrangement of floors indicated on the plan could be treated merely as an exchange of space between the city and county, where there was nothing on the record showing any agreement with respect to an exchange of use and occupancy of entire floors. Such an arrangement for exchange of space could only be by lease or contract.

3. Under the Act of April 18, 1913, P. L. 96, Sec. 3, which further

provides that the authorities of the city and county intending to erect a joint building "are authorized and empowered to make such other agreements, and to do such other acts as may be necessary to fully exercise the powers herein conferred," the employment of a competent constructing and supervising engineer to sublet contracts and oversee their execution, was a proper exercise of the discretion conferred by the statute. It was not necessary that the contract for the erection of the entire building should be let as a whole to a general contractor.

Argued Feb. 2, 1915. Appeals, Nos. 72 and 73, Oct. T., 1915, by plaintiff and defendants, respectively, from decree of C. P. Allegheny Co., July T., 1914, No. 1973, in equity, awarding an injunction restraining erection of joint county and city building in case of Charles P. Trimble v. City of Pittsburgh and County of Allegheny, Joseph G. Armstrong, Mayor; Robert Swan, Director of Public Works, and James Brown, Deputy Controller of said city, J. Denny O'Neill, Stephen J. Toole and I. K. Campbell, County Commissioners of said County. Before Brown, C. J., Mestrezat, Potter, Elkin and Frazer, JJ. Affirmed.

Bill in equity for an injunction to restrain erection of joint county and city building and to restrain defendants from employing a supervising engineer to oversee the erection of such building. Before Shafer, J.

The facts appear by the opinion of the Supreme Court.

The lower court awarded an injunction restraining defendants from erecting the building in the manner proposed, but refused to enjoin defendants from employing a constructing and supervising engineer to oversee the erection of the building. Plaintiff and defendants appealed.

*Error assigned,* among others, was the decree of the court.

*B. J. Jarrett,* with him *C. A. O'Brien,* for City of Pittsburgh.

*Edward B. Vaill,* with him *A. B. Hay,* for Allegheny County.

*Lee C. Beatty,* of *Beatty, Magee & Martin,* for Charles P. Trimble.

OPINION BY MR. JUSTICE POTTER, March 22, 1915:

In the Act of April 18, 1913, P. L. 96, it is provided that in each county of this Commonwealth, where the county seat is within the limits of any city, the county commissioners and the corporate authorities of such city shall have the power to agree upon a site within the limits of such city, and to erect thereon a joint county and municipal building, to be used by the county for court house and other county purposes, and to be used by the city for municipal purposes. In such case, the county commissioners and the corporate authorities of such city are to agree upon and adopt plans for such building, which shall show the part thereof selected by the county commissioners to be used for court house and other county purposes, and the part thereof selected by the corporate authorities of such city to be used for municipal purposes. It is also provided that the county and city shall own in severalty the part of the building selected by each, and the land upon which such part of the building so selected is constructed. Under the authority of this statute the City of Pittsburgh and the County of Allegheny propose erecting a joint building for municipal and county purposes. They have agreed upon a site for the erection of such a building, and for that purpose the county has acquired the northerly half, and the city the southerly half of a city square in Pittsburgh. But according to the plan which has been prepared, it is proposed that certain entire floors of the building which they propose to erect, shall be used by the city, and certain other entire floors by the county, so that the part of the building selected for use by each of the municipalities, will not be located entirely upon

the ground owned by it in severalty, but will overlap upon the ground of the other. It is proposed that the offices and rooms to be constructed in the joint building, designed for the use of the city and county respectively are, in the basement and first and second stories, to be located upon the ground belonging to each respectively; but those in the whole of the third, fourth, fifth and sixth stories over the entire square, are to be used by the city, and those in the seventh and eighth stories are to be used by the county, while the ninth story is to be divided between them equally. Alleging that this plan, showing the division of the space as proposed, was in violation of the terms of the statute, the plaintiff, Charles P. Trimble, a citizen and taxpayer of both city and county, filed the present bill in the Court of Common Pleas of Allegheny County, against the City of Pittsburgh, and its officials, and the county commissioners of Allegheny County, to enjoin the erection of a joint building in the manner proposed, and for the further purpose of enjoining them against employing a constructing and supervising engineer to oversee the erection of the building; it being alleged that it may not lawfully be constructed except through the medium of a general contractor. The trial judge reached the conclusion that under the terms of the statute in question, neither the city nor the county had the right to erect upon its own land, any part of the building which was not intended to be used for its own purposes, or to erect upon the land of the other any portion of the building intended for its own use. He therefore awarded an injunction to restrain the erection of a building according to a plan by which portions selected for the use of one municipality are to be erected over and upon the land of the other. He held, however, that the employment of a consulting and supervising engineer was not illegal, and that such employment ought not to be enjoined. Exceptions were filed by both parties, which were dismissed by the court below, and a final decree was entered in accord-

554    TRIMBLE *v.* CITY OF PITTSBURGH.

ance with the conclusions of the trial judge.   Appeals
have been taken by plaintiff and defendants, and both ap-
peals will be considered and disposed of in this opinion.

The conclusion reached by the court below, that nei-
ther county nor city could adopt a plan for the construc-
tion of any part of the building upon land which it did
not own, is based upon the last clause of the first sec-
tion of the act, which reads: "And the county and city
(shall) own in severalty the part of the building selected
by each, and the land upon which such part of the build-
ing so selected is constructed."   The trial judge says:
"We are of opinion that whatever may be meant by a
joint building, the intention of the legislature was that
each municipality shall own the land upon which is to
be erected the portion of the building that it is to use.
It is plainly directed that the city and county shall
each own the part of the building selected by them,
that is selected for use, and shall own the land upon
which the part of the building so selected is constructed.
If some stories of the building are to be used by the city
and others immediately under or over them, by the coun-
ty, both of them cannot own the land on which these
stories are constructed; and it is equally plain that
the act contemplates no general ownership of the land,
but requires each municipality to be the owner in sev-
eralty of a part of the whole site."   The testimony shows
that the plan of construction proposed is so admirable,
and so desirable in every way, that we have examined
the language of the statute with extreme care, in order to
find if possible, support for the proposed action.   But
we are convinced that the conclusion reached by the
trial judge is unavoidable under any fair construction
of the plain words of the act.   The plans adopted must
show the part of the building selected by the county com-
missioners to be used for county purposes, and the part
selected by the corporate authorities of the city to be
used for municipal purposes.   And the county and city
are to own in severalty the part of the building thus

selected by each for its own use, and the land upon which such part of the building so selected is constructed. There is no authority for each municipality to select for its use a part of the building constructed upon land owned by the other. The intention is plain that each is to own in severalty the part of the building selected for its use, and the land upon which it stands. It is suggested that while the title to its own portion must remain in each, yet a plan may be adopted by which the county may arrange certain floors for the use of the city, and vice versa, but that the matter may be treated merely as an exchange of space between the city and the county. But the testimony does not indicate that any such theory lies behind the plan proposed. We can find nothing in the record to sustain the suggestion that the city and county are dealing with this question as a matter of leasing whole floors or portions of floors, each to the other. On the contrary the evidence shows that each has selected, apparently for its permanent use, certain whole floors, in the building, in disregard of the terms of the statute, which requires each to own in severalty the part of the building selected by it, and the land upon which such part stands. Reading the act of assembly as a whole, we cannot avoid the conclusion that the legislature did not intend to authorize the adoption of such a plan as is proposed. That either the city or county might under ordinary circumstances lease part of its floor space to the other is undeniable. But in this statute, under which joint action by city and county is to be taken, there appears the plain requirement that each of the municipalities must own in severalty the part of the building which it uses, and the inference is equally plain that each is to be confined in its use to the part which it owns. Were it not for these limitations in the act, there would seem to be no good reason why, in the interest of convenience and economy, the county should not be permitted to construct and finish certain of the floors in its portion of the building, to suit the con-

venience of the city; nor would any good reason be apparent, why the latter should not be permitted to construct and finish certain of the floors in its part of the building, to suit the requirements of the county, so that in furtherance of mutual convenience, the two municipalities could exchange leases for the space required to perfect the plan desired. But the plain wording of the act, as it now stands, is in the way of this desirable arrangement. If modification of the statute in question is desired, application should be made to the legislature. As a matter of course, actual ownership of the parts of the building should follow and correspond with the lines of ownership of the ground. Any such arrangement as is suggested with respect to an exchange of use and occupancy of certain entire floors of the joint building, should be by way of lease, or contract between the parties.

Counsel for appellants argue that in the statute a general intention is shown to authorize the erection of a joint building such as is in general contemplated by the plan, and that therefore the particular words of the act upon which the court below rests its decision, should be disregarded, as being inconsistent with the general purpose of the act. We do not, however, feel at liberty, to ignore any portion of the statute. The construction adopted by the court below gives effect to all the provisions of the act, and makes it consistent throughout. The advantages of the proposed plan of construction, and the arrangement of the building, are manifest, but that is not a matter which the courts are at liberty to accept as controlling. They have only to deal with the extent and limitations of power conferred by the act. If authority is desired by the county and the city for the construction of a joint building so designed that part of the building on the land owned by each municipality may be used by the other, the proper course will be to apply to the legislature to remove the limitations imposed by the Act of April 18, 1913, P. L. 96. We cannot go beyond, nor can

we ignore any part of the plain requirements of the statute as it now stands.

On behalf of the plaintiff, Charles P. Trimble, it is contended that the authorities of the county and city have no right to employ a supervising engineer, to let separate contracts for the various parts of a joint city and county building to be erected under the provisions of the act of assembly in question. It is alleged that the contract for the construction of any such building must be let as a whole to a general contractor. We can see no basis for any such claim. By Section 3 of the act, the authorities of a county and city intending to erect a joint building are "authorized and empowered to make such other agreements, and to do such other acts, as may be necessary to fully exercise the powers herein conferred." Under this general grant of power the employment of a competent constructing and supervising engineer to let subcontracts and to oversee their execution, is a proper exercise of the discretion conferred in the statute. Evidence was offered tending to show that the employment of a supervising engineer for such purposes, is becoming a common and approved method in the erection of large buildings, and especially in the construction of public buildings, and that this method tends to promote economy, both of time and money. The services for which a supervising engineer is employed, and which he is expected to render, are not included within the scope of the duties of the architect. In attempting to sustain their contention that the contract for the erection of the entire building should be let to a general contractor, counsel for appellant refer to the acts of assembly requiring county and municipal contracts to be let after advertisement to the lowest and best bidders. But there is nothing in these acts, requiring a public building to be erected under one general contract, or forbidding its erection under several separate and independent contracts, provided such contracts are awarded in the manner prescribed. Defendants state in their answer that

"the acts in so far as they apply to the construction of such building must and will be complied with in entering into the various contracts for the several portions of the work." The engineer is to be the officer or agent, through whom the various contracts are to be let to the lowest and best bidders. We have no doubt whatever as to the right of the county and city, if they deem it to the best interest of the public to do so, to take bids from various contractors, for materials, and for the erection of different parts of the building. And as the court below well says, "it would seem to be reasonably necessary to have the assembling of the various parts of the building, and the inter-working of the various contractors managed by some person having skill in that matter." Such an important and costly operation calls for the supervision of an expert. It is to be presumed that if this work were to be done through a general contractor he would demand as his compensation a considerable profit upon the entire work and upon the subcontracts made by him. If the authorities of the county and city deem it the part of wisdom and economy to save a portion of this outlay by employing their own supervising engineer, to let subcontracts directly, and to oversee their prompt and proper execution, and to coordinate the general work of construction of the building, we can see no legal reason why such an obviously desirable course should not be pursued.

The assignments of error in the appeal of the City of Pittsburgh, and the County of Allegheny are overruled, as are the assignments of error in the appeal of Charles P. Trimble. The appeals at Nos. 72 and 73, October Term, 1915, are each dismissed at the cost of the respective appellants, and the decree of the court below is affirmed.