WILSON AND PULLEN v. H. G. HOLDING, COUNTY AUDITOR.

(Filed 24 November, 1915.)

1. **County Commissioners—County Auditors—County Expenses—Contracts— Special Auditing—Approval by Auditor—Counter-signature — Statutes — Constitutional Law.**

   Revisal, sec. 1379, enacted in pursuance of the provisions of Art. VII, sec. 2, of our Constitution, giving the commissioners of a county a general supervision and control of its finances, invests the board with full power to direct the application of all moneys arising by virtue of ch. 25, "for the purposes therein mentioned, and to any other good and necessary purpose for the use of the county," and includes within its terms the right of the board, in its discretionary power, to contract with skilled expert accountants for the auditing of the books and accounts of the various departments of the county at a price agreed upon, and empowers them to order that the same be paid by the county treasurer out of the county funds.

2. **County Commissioners—Discretionary Powers—Courts.**

   The courts cannot interfere with the exercise of the discretion of the boards of county commissioners in ordering an investigation by public accountants of the books of the various departments of the county government, authorized by Revisal, sec. 1379.

3. **County Commissioners—County Auditor—Approval — Counter-signature — Interpretation of Statutes.**

   Various acts of the Legislature relating to the same subject-matter should be construed, when possible, so as to bring them into harmony with each other; and it is *held* that the Public Local Laws of 1911, ch. 452, as amended by the act of 1913, ch. 306, creating the position of auditor for Wake County, to be appointed by the board, and, "under its control and discretion," and providing, among other things, that it shall "be his duty to audit all bills and claims presented to the board . . . and no claim or bill filed . . . shall be allowed or paid until it has been audited by the said auditor; and all warrants . . . shall be counter-signed by him," should be construed in connection with Revisal, sec. 1379, giving the board of county commissioners control of the county finance, etc., and that, so construed, it does not take from the commissioners the power to contract, in their discretion, for a necessary county expense; though it is proper that the account be first referred to the county auditor for his investigation, approval and counter-signature, under the direction of the statute.

4. **Mandamus—County Auditor—County Commissioners—Alternate Mandamus.**

   A peremptory *mandamus* will not issue to the auditor of Wake County to compel him to approve and countersign an account for an indebtedness arising under contract made by the county commissioners in a sum certain and passed upon and approved by them, without first referring the claim to him for auditing and reporting to the board; and, in this case, an alternate writ is directed, requiring him to countersign the claim or show cause why he has not done so, giving him time to examine witnesses under the statutory authority given him, if he so desires; and, should he continue to refuse, it is within the power of the commissioners to order him to do so, that the treasurer may pay the claim.

**5. Same—Appeal and Error—Costs.**

> The costs on appeal in this case are taxed equally between the parties, it being decided that an alternative writ be ordered to issue in the lower court, to the county auditor of Wake, to audit and countersign an account ordered by the county commissioners to be paid, and that the relief of a peremptory *mandamus* was properly refused.

APPEAL by plaintiffs from *Peebles, J.,* at September Term, 1915, of WAKE.

Civil action for a mandamus, heard upon a case agreed.

The board of commissioners of Wake County, wishing to make a general and thorough investigation of the records of the board, and of the register of deeds, treasurer and other officers of the county, to ascertain how the county affairs had been managed and the funds had been expended, authorized its chairman to employ expert accountants for the purpose, which was done, and plaintiffs were selected by the chairman and contracted to do the work, and, after having performed the service and made a full report thereof to the board, they presented the bill for their services to the board of commissioners, which was approved by the board, and on 6 July, 1915, ordered to be paid by the county treasurer. This bill was duly presented to the defendant, as auditor of the county, under the statute, and he refused to audit the same, giving the following reasons substantially for his said refusal: That the services rendered by the plaintiffs, under the contract with the board of commissioners, did not constitute a legal charge against the county, and that the bill as filed by plaintiffs contained no itemized, detailed or sufficient showing as to what services they had performed, and did not constitute a sufficient voucher to support a warrant for the payment from the treasury of Wake County of the amount necessary to pay the said bill, and was not sufficient to constitute a perpetual record of Wake County relating to the disbursement proposed; and that, in the opinion of the auditor, if the services were rendered pursuant to the provisions of subsection 5, section 1398, Revisal of 1905, they would constitute a valid charge against Wake County, but that the bill should show that they were so rendered and performed, and all of the services stated in bill were not rendered under subsection 5, section 1398, Revisal of 1905. When the account was first presented by the plaintiffs to the auditor to be countersigned he requested them to amend by showing if the services or any of them were rendered under Revisal, sec. 1398, subsection 5, or under any other section of the statutes, and, if so, what section, and this request was renewed on 10 July, 1915, after the board of commissioners for the county had passed this resolution: "That the order heretofore passed, ordering the payment of $638.43 to Wilson & Pullen, incorporated, be amended by adding the words, 'and the board finds as a fact

23—170

that this amount is for a necessary expenditure (expense) of the county.'" There was no compliance with the request.

The auditor contended below, and also in this Court, that the law, at present, does not contemplate or authorize the employment of special accountants, as ample provision is made for a thorough examination of all records and accounts by the statutes as they now exist, and he relied upon Revisal, sections 1318 (5), 1389, 1390, 1391, 1398, 2779, 2781, and Public Laws 1915, ch. 286, sec. 108. He also contended that he was appointed as auditor of the county of Wake under Public Local Laws 1911, ch. 452, as amended by Public Local Laws 1913, ch. 306, and that by said acts ample provision is made for investigating and auditing all of the records and accounts of the county and all bills presented against it by him as auditor. Among the duties imposed on him by the said act are the following: "That he shall act as accountant for the county, settling with the county officers; and supervise, scrutinize and examine, at least once in every calendar month, all books, accounts, receipts and vouchers, and other records of all the officers of Wake County which show fees and commissions collected and received by them; and examine, at least twice each year, the dockets of all justices of the peace and mayors of said county, and report his findings to said board of county commissioners; and he is hereby authorized to administer oaths on verification of claims which may be filed against the county, and board of education of Wake County, and open a set of account books, in which shall be shown the total monthly receipts of fees and commissions of all the officers of said county in an expert and intelligent manner, assigning distinct and separate accounts for each and every of said officers, which books shall be permanently kept as the records of his office and always open to public inspection."

The plaintiff contended that by the Constitution of the State and the statutes passed in pursuance thereof, general supervision and control were given to the board of county commissioners over all county affairs, and especially in regard to the county finances, it being the highest governing body, having jurisdiction, so-called, and general supervisory power, over all the other officers, where the management of county affairs and the expenditure of money are involved, with some few exceptions not applicable to this case. Their claim is rested upon Constitution, Art. VII, sec. 2, giving to the board control of the "county finances," and Revisal, sec. 1379, giving it "full power to direct the application of all moneys arising by virtue of Revisal, ch. 25, for the purposes therein mentioned, and to any other good and necessary purpose."

Plaintiff also relies on a provision of the statute creating the office of auditor for Wake County, being Public Local Laws 1911, ch. 452, as amended, Public Local Laws 1913, ch. 306, which reads as follows: "It shall likewise be his duty to audit all bills and claims presented to the

board of county commissioners of said county and the said board of education for payment, and no claim or bill filed with said board of commissioners or said board of education shall be allowed or paid until it has been audited by said auditor; and all warrants drawn upon claims or bills allowed by said board of commissioners or by said board of education shall be countersigned by said auditor before they shall be honored or paid by the treasurer of the county." And further, in section 17, "Said auditor shall hold office under the control and direction of the said board of commissioners for said county." It is provided by Public Local Laws 1913, ch. 306, sec. 6 a: "No fees, salary, or compensation or other charges, other than are provided for in and fixed by said chapter 452, shall be audited or paid out of the general county fund or road fund of Wake County by the treasurer of said county, except by and with the authority, consent, and approval of the board of commissioners for Wake County."

The court, after hearing argument of counsel, refused to grant the writ of *mandamus,* and plaintiff appealed.

*Cox & Cox for plaintiffs.*
*R. N. Simms, W. B. Snow, and Manning & Kitchin for defendant.*

WALKER, J., after stating the case: We have not the slightest doubt that the defendant has refused to audit the plaintiff's claim from the best motive, that of faithfully and honestly discharging his duty as a public officer of the county, and he should be highly commended for it. The question upon which we are asked our opinion is whether, by a proper construction of the Constitution and statutes to which we have referred in our statement of the case, the defendant can, in law, refuse to countersign this claim, so that it can be paid by the county treasurer. The Constitution, Art. VII, sec. 2, requires the county commissioners to exercise a general supervision and control of the county finances, as may be prescribed by law, and Revisal, sec. 1379, invests the board with full power to direct the application of all moneys arising by virtue of ch. 25, entitled "County Revenue," "for the purposes therein mentioned, and to any other good and necessary purpose for the use of the county." It is our duty so to construe this section as to reconcile it with Public Local Laws 1911, ch. 452, as amended by the act of 1913, ch. 306, creating the office of auditor for the county of Wake, if it can be done, and we think it can be, even if there is an apparent conflict between them. The defendant sufficiently audited the plaintiff's claim in this case except as to the amount thereof, when he ascertained, as he did, that the board of commissioners had, through their chairman, employed it, as a corporation engaged in such work, to make an expert examination of the books of the county. This was done by the board with a laudable

motive, and, as we think, for a perfectly proper and legitimate purpose. They were not bound to confine their efforts to the specific method allowable under other statutes, but if the good of the county, in the exercise of their judgment, acting as they were for its best interests, required such an investigation to be made, it was clearly within their power to order it and to employ experts of great skill in such matters to make it. The statute provides that they may apply the county money to "any other good and necessary purpose." We have repeatedly held, beginning with *Brodnax v. Groom*, 64 N. C., 250, and ending with *Comrs. v. Comrs.*, 165 N. C., 534, and more recently *Hargrave v. Comrs.*, 168 N. C., 626, that what is a "necessary expense" for a county is to be determined by the sound judgment and discretion of its board of commissioners.

It was said by *Chief Justice Pearson*, as far back as the time when the case first cited was decided, "that the court has no power of controlling the exercise of power conferred by the Constitution upon the legislative department of the Government, or upon the county authorities." And in *Comrs. v. Comrs., supra*, we said: "This is not a matter over which this coördinate department of the Government has any control. If the result is bad, the remedy is to be found in the power of public opinion, either in controlling the conduct of such members or in electing successors who will cause the objectionable legislation to be repealed or modified. The courts do not have supervisory power over the General Assembly, or over the county officials when acting within the authority lawfully conferred upon them by the Legislature. If there were allegation and proof that the defendants, or any other public officials, were acting dishonestly, or so extravagantly or so recklessly as to amount to an abuse of the authority conferred upon them, the courts might, by injunction in such case, restrain the alleged illegal acts until a jury could pass upon the issues of fact; but the courts cannot interfere with such powers as are conferred upon the defendants by the statute in this case, which, as we have held, were within the power of the General Assembly." And in *Hargrave v. Comrs.*: "The courts can compel officials to comply with a lawful statute. They cannot direct them to disobey it. The courts can supervise by *mandamus* or injunction the action of officials only to insure their faithful execution of the duties imposed upon them by the statute."

The fault in the argument of the defendant is that it does not sufficiently distinguish between the power of the county commissioners, in their general control of him, and in the exercise of a superior authority, to direct him to pay a particular claim, contracted by the board, and the power he has to audit claims generally. Where the board of county commissioners, having created an obligation of the county itself for a good and necessary purpose, of which it is the judge, and fixed the

amount of it, the duty of the auditor is fully discharged when, after ascertaining this fact, he countersigns the order upon the county treasurer, for the board had the power so to contract, and is the sole judge, as we have said, of the propriety and necessity of doing so, and of what shall be paid for the service. This but recognizes the supreme power and control of the board in such matters.

In this respect the case is not unlike that of *Halford v. Senter,* 169 N. C., 546, where *Justice Brown,* for the Court, said: "The Constitution of this State prescribes that a board of commissioners shall be biennially elected in each county. Such board is given 'a general supervision and control of the penal and charitable institutions, schools, roads, bridges, and of the levying of taxes, and of the finances of the county, as may be prescribed by law.' The commissioners constitute the local governing body of the county, and are directly responsible to the people who elected them. It is not only reasonable, but due to the people of the county, that these men, elected by them, should have supervision and control over the expenditures of a subordinate and nonelective board. It is not to be supposed that the General Assembly intended to deprive the taxpayers of a county of such necessary and proper protection and safeguards which are thus thrown around the county treasury." In one respect this case is stronger than that one, for the statute which creates the office of auditor for Wake County places the incumbent, of it "under the control and direction of the board of commissioners for said county." It is true that he is required to audit all bills and claims presented to the board of commissioners of said county before they are paid, but, in this case, the board had made the contract for the particular service, knew what it was and what to pay for it, and it cannot, therefore, be successfully urged that it required any more than a formal auditing by him, if any at all, and that he countersign it, unless we are prepared to hold that his authority and power over the payment of this claim is superior to that of the board.

If we should hold that the auditor could reject this claim, for that is what it will amount to if he refuses to audit it, the result would be that, for all practical purposes, and in a very effective way, he would completely supersede the board of commissioners in the control and management of county affairs, and it surely was not the intention of the Legislature in passing the act creating his office, that an appointive officer should take the place of and dominate those who had been elected by the people as their chief officers and clothed with supreme power in county government. The language of the statute implies that when bills are presented to the board of county commissioners they shall first be audited, for it provides that it shall be the duty of this officer "to audit all bills and claims presented to the board of county commissioners and the board of education for payment, and no claim or bill filed with said

boards shall be *allowed* or *paid* until it has been audited by him," and it further provides that all warrants drawn for claims or bills allowed by said boards shall be countersigned. This language indicates an intention that the auditor should assist the board of county commissioners in the examination of all bills and claims and ascertain whether, in his opinion, they are proper charges against the county, to the end that the board may determine whether a warrant or order for payment should be made, and if so, for how much; but the opinion of the auditor as to the validity of a claim is not conclusive on the board, for the statute expressly subjects him, in the discharge of his official duties, to "the control and discretion of the board." The position of auditor was created for the purpose of safeguarding the interests of the county in the allowance and payment of bills and claims presented against it, as well as for the other purposes mentioned in the statute, but the board must, at last, determine whether any particular claim should be paid, and, if so, how much of it, after considering the report upon it by the auditor, or any information derived from him or otherwise, and when it passes upon the claim and issues its order upon the treasurer it will be the duty of the auditor to countersign the warrant and of the treasurer to pay it.

There is nothing in the statute which will justify the inference that the auditor should *approve* the claim before it is allowed by the board. The power "to allow," that is, finally to determine the correctness and validity of the claim against the county, is left with the board, and the auditor merely examines the account, after hearing the parties concerned, by comparing the charges with the vouchers, taking testimony, if he deems it necessary, and stating the result. This defines the duty of an auditor as we find by reference to the dictionaries. He may, of course, be given larger powers by law, but in regard to county claims he is given only the power to investigate and report his findings to the board, which is strictly the duty of an auditor, and the board decides what shall be done with the claim. It is still the governing body of the county. The statute is not obscurely worded, but expresses clearly the intention of the Legislature, and our construction of it will produce, we hope, more harmonious relations between the auditor and the board. We do not decide anything as to the board of education, for no such question is before us.

The view we have taken of the statute is further supported by the provision we have quoted at the end of the statement, to the effect that no fees, salary, compensation, or other charges for services, except as otherwise provided by law, shall be audited or paid out of the general county fund or road fund of the county by the treasurer, except by and with the authority, consent and approval of the county board of commissioners.

As the board of commissioners did not proceed strictly according to the requirement of the statute by first referring this claim to the defendant, that he might audit the same and report the facts to the board, we will not order a peremptory *mandamus* to be issued, but, as there is *now* apparently no objection to the claim, we direct that the Superior Court issue an alternative writ to the defendant, requiring him to countersign the warrant of the board of county commissioners, or show cause why he has not done so, and, in the meantime, and in order to comply literally with the statute, the defendant may audit the claim by such investigation as he deems proper, and, for that purpose, the parties concerned will appear before him, if notified so to do. He will then report his findings to the board of county commissioners, and, if they still order the claim, or any part thereof, to be paid, and issue their warrant accordingly, he will countersign the same, so that it may be paid by the treasurer, and the judge will afford reasonable opportunity for the auditor to comply therewith. If he fails to countersign the warrant he will show cause for his failure to do so according to the mandate of the alternative writ. The costs of this Court will be divided equally between the parties.

Modified.