ARNOLD et al., Appellants, *v.* CUSTER COUNTY et al., Respondents.

(No. 6,308.)

(Submitted June 11, 1928. Decided July 24, 1928.)

[269 Pac. 396.]

Mr. *George W. Farr,* Mr. *R. B. Hayes* and Mr. *W. H. O'Connell,* for Appellants, submitted a brief; Mr. *Farr* and Mr. *O'Connell* argued the cause orally.

132

*Mr. Rudolph Nelstead, Mr. H. E. Herrick* and *Messrs. Loud & Leavitt*, of Counsel, for Respondents, submitted a brief; *Mr. Nelstead* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

The appeal in this case is taken from an order of the trial court, refusing to grant an injunction *pendente lite* and dissolving a restraining order.

Custer County had bid in and purchased, at tax sale, certain pieces of real . estate situate therein and sold for delinquent taxes. The period for redemption thereof having expired, the Board of County Commissioners decided to take steps to obtain deeds thereof to the county. An offer was made to the board, by the Custer Abstract Company, engaged in the title abstract business in Custer County, to furnish certain information appertaining and necessary thereunto. In that connection, there appears in the journal of the board's proceedings this entry: ''The board took up the consideration of applications for tax deed on lands on which the county is now the holder of certificate of tax sales. After giving

the matter due consideration, the board, pursuant to Chapter 92 of the Laws of 1927, ordered and directed that the county clerk apply to the county for the issuance to the county of tax deeds on such property. The Custer Abstract Company having submitted in writing its offer to furnish all record information and a written report on the title to all real property on which there are delinquent taxes as shown by the records in the county treasurer's office, * * * for the sum of $5 for each report, as outlined in said offer, after giving the offer due consideration the same was accepted on the terms contained in said offer. Further consideration of the above matter followed and it was decided to allow the county clerk one special deputy at $133.33 per month and one special deputy to receive $112.50 per month, to assist on this particular work.''

Thereafter and in pursuance thereof, the Custer Abstract Company furnished to the county clerk, as to each of many of such pieces of real estate, a report containing all information required by law and necessary in the making of application to the county treasurer for a deed thereto and the giving of notice thereof, as provided in section 2209, Revised Codes, 1921, and the making of the affidavit provided for in section 2212, Revised Codes, 1921, and the county clerk used such information in the matter of the procurement of the deeds for which he had been directed by the Board of County Commissioners to make application. As to each of such pieces of real estate, the information consisted of the name of the owner; the name of the occupant, if occupied; the name of the mortgagee, if the records in the office of the county clerk showed an unreleased mortgage, and the name of the assignee of mortgage, if there was, of record, an assignment of such a mortgage.

September 26, 1927, the Custer Abstract Company filed with the county clerk a claim in the sum of $3,525, against Custer County, for 705 such reports, and, October 5, 1927, the Board of County Commissioners allowed the claim and

the county clerk drew and delivered to the abstract company a county warrant, for that amount, in payment of the claim; and, October 25, 1927, the abstract company filed with the county clerk a claim in the sum of $1,465, against the county, for 293 more reports.

November 5, 1927, plaintiffs, as resident taxpayers of Custer County, instituted this suit against the county and the members of the Board of County Commissioners, to enjoin them from allowing for payment the claim filed October 25, 1927, or any other such claim of the abstract company. In their complaint they allege the facts we have narrated and allege further that the allowance and payment of the claim which was allowed and paid were illegal, for the reason that the Board of County Commissioners had no authority to accept the offer of the Custer Abstract Company; that, unless enjoined therefrom, the board will allow the claim of the abstract company filed October 25, 1927, which is an illegal claim, and, in that event, it will be paid; that the abstract company is continuing to do work under its proposal, accepted by the board, and is continuing to furnish such reports and it will have other claims therefor to file, all of which will be illegal and allowance of which would be without authority of law; that if appeal from allowance of each of such claims, filed or to be filed, should be taken, from month to month, a multiplicity of suits would result. It is prayed that the board be enjoined permanently from allowing any claim of the abstract company for furnishing such reports and particularly from allowing the claim filed October 25, 1927, and that an order, directed to the members of the board, issue, requiring them to appear upon a day certain and show cause why they should not be enjoined from so doing, pending the litigation, and that meantime a restraining order issue.

An undertaking was filed and the order to show cause issued and was served. It was accompanied by a restraining order.

On the return day, defendants appeared and filed a return and answer. In it are admitted the offer of the abstract company alleged in the complaint and the entry in the journal of the board's proceedings which is set forth in the complaint; also, the filing of the abstract company's claim against the county for 705 reports and allowance and payment thereof and the filing of its claim for 293 more reports and that the abstract company is continuing to furnish such reports and will have more claims therefor to file. It is denied that the acceptance by the board of the abstract company's offer was without authority of law and that the allowance and payment of the abstract company's claim which was allowed and paid were illegal. It is alleged that the land bid in and purchased by the county at tax sale, for delinquent taxes, and subject to tax deeds, for which the county held certificates of sale, comprised more than 1,500 tracts or lots, consisting of more than 162,000 acres, and that the delinquent taxes thereon amounted to more than $170,000, and the assessed valuation of the land was more than $1,000,000; that the Montana Tax Commission had required county commissioners to procure tax deeds to all lands upon which taxes had been delinquent for the required statutory time; that the board decided it was advisable and necessary to procure tax deeds to such land in Custer County and proceeded to do so; that, in order for the county to sell such land, it was necessary that the county procure merchantable title thereto and to do that it was necessary for the county to give legal notice of application for tax deeds to all owners, mortgagees or assignees of mortgages; that the information necessary thereto could be furnished, with any degree of certainty, only by an abstractor of titles and, to that end, the board requested the Custer Abstract Company to submit to the board its proposal for furnishing such information and it did so and the board accepted the proposal and thereupon the abstract company proceeded to furnish and did furnish the county clerk with a large number of reports, containing the required information

as to different and divers tracts of such land; that such reports were necessary and the expense incurred thereby is a legal expense and a legal charge upon the county; that such reports constitute the only manner in which the county, through its county clerk, can proceed with any certainty in procuring tax deeds and it is to the best interest of the county to have such reports.

In a further return and answer, it is alleged that notice of application for a tax deed must be given by the applicant to all owners, mortgagees or assignees of mortgages of the land affected; that, pursuant to law, the county clerk of Custer County maintains indices of deeds, mortgages and assignments of mortgages and that such indices are the only means the county clerk has of learning anything about state of title to a particular piece of land; that, by reason of breaks in chains of title, the information necessary for such notices, so the county could give the notice required by law and procure merchantable title, cannot be obtained, with any reasonable certainty, from such indices; that the only way in which the county can obtain such information is by means of reports from an abstractor of titles, taken from a tract index, a record system used by abstractors and kept and used by the Custer Abstract Company. Defendants prayed that plaintiffs be granted nothing and that their complaint be dismissed. There was no reply.

The hearing upon the order to show cause and the issues joined proceeded at the time set therefor. It was had upon oral testimony and documentary evidence offered in connection therewith.

The county clerk was the only witness who testified on behalf of plaintiffs. On behalf of defendants there was testimony from the chairman of the Board of County Commissioners, a former county clerk, several abstractors and two of plaintiffs' attorneys.

From all thereof it was shown clearly, we think, that, as required by law, the county clerk keeps in his office record

books in which are recorded deeds, real estate mortgages and assignments of such mortgages and alphabetical name indices to such records; that the only feasible way in which he can obtain information, in his office, as to title to real estate is by the use of his indices; that that method is not reliable and there cannot be learned therefrom, with any reasonable certainty, the facts necessary to be known in giving notice of application for a tax deed; that there are frequently breaks in chains of title which are not revealed by the county clerk's indices; that, owing to change of name, death, lack of recordation of a link in chain of title or other cause, there are sometimes of record instruments, necessary to be known in giving such notice, which are not ascertainable from his indices; that the only way in which all the information necessary to be had in giving notice of application for a tax deed can be obtained, in many instances, is from a tract index, a record system used by abstractors; that a tract index is a book in which, by daily entry, is indexed, as a charge against each subdivisional tract of land in a county, every recorded instrument affecting it; that the Custer Abstract Company has and uses a tract index to all lands in Custer County; that the county clerk is not required to and does not keep one; that, in getting information for use in a tract index, an abstractor gets from the county clerk's office all of his information as to recorded instruments but gets certain other information from the office of the assessor, the office of the clerk of the court and other sources. The trial court decided for defendants and plaintiffs appealed.

Plaintiffs contend (1) that the county clerk can get from ▮▮▮▮▮ his records, as well as can an abstractor, all the information required to be used in giving notice of application for a tax deed; (2) that, if not, he must use such means as are at his command and, if they be inadequate, the legislature must be looked to to remedy the condition and the county commissioners have no power, express or implied, to contract with anyone else, at the expense of the county, for such

information. Defendants contend (1) that the county clerk is unable to obtain from his records, with reasonable certainty, the requisite information and (2) that the county commissioners have the implied power to contract therefor, at the expense of the county, with an abstractor.

With the first contention of plaintiffs we do not agree. It is shown by an overwhelming preponderance of the evidence, practically undisputed, in many instances, the county clerk cannot obtain, with reasonable certainty and expedition, from his records knowledge of the facts required for giving legal notice of application for a tax deed, because it can be obtained, with reasonable certainty and expedition, only from a tract index, which is not required to be and is not kept by the county clerk but which is kept by the Custer Abstract Company, and that that company can, with certainty and dispatch, furnish the knowledge.

It is true that the abstract company gets from the daily filings for record in the county clerk's office, in part, the information necessary to keep up its tract index but it uses that information upon a system not authorized to be used and not used by the county clerk. At the outset, then, we are confronted with the question of the implied power or lack thereof in the county commissioners to contract with an abstractor for the information needed. Must the county commissioners, when directing the county clerk to apply, in behalf of the county, for a tax deed, rely upon such imperfect information, for the purpose of giving notice, as the county clerk may obtain from his indices and let it go at that or have they power to contract, at the expense of the county, with an abstractor for dependable information?

Section 2209, Revised Codes, 1921, in effect provides that the purchaser of (real) property sold for delinquent taxes, or his assignee, previous to application for a deed, must serve upon (1) the owner of the property purchased (if known) and (2) the occupant (if it be occupied) and, *if the records in the office of the county clerk show an unreleased mortgage,*

(3) the mortgagee or, *if assigned*, (4) the assignee of the mortgage written notice of intention to apply for a deed and certain facts in connection therewith and thereupon the owner and the mortgagee or his assignee have certain rights of redemption.

Section 2212, Revised Codes, 1921, in effect provides that, before the county treasurer or any other official shall issue a deed to (real) property sold at tax sale, the purchaser shall file an affidavit showing that the notice required, as above stated, has been given.

Chapter 92, Session Laws of 1927, in effect provides that, when a county is the holder of a certificate of sale of property sold for taxes and intends to apply for a tax deed, the county clerk shall give the notice required to be given. Therefore, it is then the duty of the county clerk to make the affidavit required. The county clerk then must swear that he served such notice on (1) the owner of the property (if known) and (2) the occupant (if it be occupied) and, *if the records in the office of the county clerk show an unreleased mortgage,* (3) the mortgagee, or, *if assigned,* (4) the assignee. Therefore, if there be an unreleased recorded mortgage in the records, the county clerk must swear that he gave notice to the mortgagee or, if there be recorded an assignment of the mortgage, he must swear that he gave notice to the assignee.

There are three ways in which the county clerk may learn the facts to which he must swear:

1. He may rely upon his indices. The evidence shows that method to be uncertain and unreliable. It shows that there are instances in which mortgages are of record which are not disclosed by the indices; likewise, assignments. In such event, there would be a mortgagee or assignee who would not be notified and there would not be compliance with the law and an imperfect title would result. Furthermore, if the county clerk should swear that he had given notice to all mortgagees or assignees or that there was no mortgage of record, he would

swear to something as a fact which he did not know to be true and which, in fact, was not true; he would swear falsely.

2. The county clerk and assistants could inspect every book of records in his office and every instrument recorded. That would require an enormous force, great expenditure of money and untold time. The evidence shows it would not be expeditious or feasible.

3. The information may be obtained from an abstractor, by means of his tract index.

It appears that the latter is the only safe, reliable and feasible method. Have county commissioners authority, express or implied, to contract for it, at public expense? Search of the statutes shows no express authority. If there be any authority, it must be implied. Boards of county commissioners may exercise implied powers if the authority therefor is necessarily implied from that which is granted expressly. (*Independent Pub. Co.* v. *Lewis and Clark County*, 30 Mont. 83, 75 Pac. 860; *State ex rel. Gillett* v. *Cronin*, 41 Mont. 293, 109 Pac. 144; *Ainsworth* v. *McKay*, 55 Mont. 270, 175 Pac. 887; *Sullivan* v. *Big Horn County*, 66 Mont. 45, 212 Pac. 1105.)

In the great majority of the states, particularly those of the West, county governing boards, be they called boards of county commissioners or boards of supervisors or county courts or what else, have conferred upon them, by statute, substantially the same powers and duties in general terms, as is the case in Montana. To like effect and with little difference in wording, they are given generally power to supervise the official conduct of all county officials charged with the assessment, collection, keeping, management or disbursement of public revenues and to represent the county and have the care of county property and the management of the business and concerns of the county in all cases where no other provision is made by law.

As to their implied powers, under those general provisions, a great many decisions may be found. We have endeavored

to collate some which are similar, in fact or upon principle or by analogy, to the case at bar.

In *State ex rel. Herren* v. *Hall*. 37 Or. 479, 63 Pac. 13, under a statute giving county courts power to represent their respective counties and to have the care and management of the property and business of the counties in all cases where no other provision is made, although it is made the duty of the tax-collector to collect the taxes, it is held a county court may employ a party to assist in collecting delinquent taxes which cannot otherwise be collected, there being no interference with the duties of the tax-collector. The opinion says: "The county court, by statute, is made the general financial or business agent of the county, charged with the care and management of its business and funds, and to that end it may, unless prohibited by law, adopt such means as, in its judgment, may be proper or expedient *to assist a county officer in the discharge of his duties.*" We do the italicizing here and in other instances.

In *Burnett* v. *Markley*, 23 Or. 436, 31 Pac. 1050, it is held the county court has implied power to contract for the making of a list of the real estate in the county and its ownership, for perfecting the tax rolls. The opinion says: "As the county court is expressly charged with the general care and management of the county property, funds and business, it may take such measures to secure a full, complete and accurate list of all the assessable property in the county, *for the use of the assessor,* as in its judgment may seem advisable or necessary. It is the business of the county, through its officers and agents, to see that all of the property within the county, liable to assessment and taxation, is placed upon the assessment roll. * * * *It is practically impossible* for the assessor to list and assess all the property in his county *without some such aid as was to be provided by the contract in question.*"

In *Wingate* v. *Clatsop County*, 71 Or. 94, 142 Pac. 561, it is recited that the statute requires the assessor to assess all

taxable property and lands at the true cash value thereof and it is held that an expenditure incurred by the county court in cruising timber land, for the purpose of assessment for taxation, *which could not be made equitably by the assessor without assistance,* is lawful, under the implied powers of the court.

In *Martin* v. *Whitman County,* 1 Wash. 533, 20 Pac. 599, under a statute giving county commissioners the care of county property and the management of county funds and business, it is held they may contract to pay five per cent. of the amount realized therefrom for the making of a tax list of all delinquent taxes. The opinion says: "The Board of County Commissioners are given a sort of supervisory power over the affairs of the county. They are made the business agents, so to speak, of the county. They have the care and management of the county funds and county business. * * * It is made their duty to care for the county property and manage the county funds and business. * * * In this case, there was a very large amount of delinquent taxes, extending over a period of several years. It was important to the county to secure the collection of these delinquent taxes and it was plainly the duty of that body having the care and management of the county business *to employ such persons and take such measures as in their judgment would best accomplish that end."*

In *Pacific Timber Cruising Co.* v. *Clarke County,* 233 Fed. 540, it is held that, in the State of Washington, under the general powers given to the Board of County Commissioners, even though it is by law the duty of the county assessor to assess all property, a contract by a board to pay for cruising and estimating timber, with a view to giving its assessable value, is valid, because, the opinion says, *it is practically impossible* for the assessor to list and assess the timber in his county, *without aid given by persons who have special knowledge or qualifications.* To like effect are *H. D. Haley & Co.* v. *McVay,* 70 Cal. App. 438, 233 Pac. 409, and *Haynes* v.

*Police Jury,* 139 La. 101, 71 So. 244. (In Louisiana, the county governing board is called the police jury.)

In *Skidmore* v. *West,* 186 Cal. 212, 199 Pac. 497, it is held that a Board of County Supervisors may contract with a party to examine records of county officials, with relation to lands sold to the state for taxes, and to report to the supervisors his findings, with recommendations for further disposition of such lands. The opinion says: "It cannot be doubted that the Board of Supervisors had the power to obtain such information as was reasonably essential to a proper discharge of these functions, even to the extent of contracting for the furnishing thereof at the expense of the county, if it was not the duty of some county officer to furnish the same, for it is well settled that *such a board has such powers as are necessary to the discharge of duties imposed by law.*"

In *Prothero* v. *Board of Commissioners,* 22 Idaho, 598, 127 Pac. 175, it is shown that, by statute, the Board of County Commissioners is given jurisdiction and power to examine and audit the accounts of all officials having the care, management, collection or disbursement of moneys belonging to the county and it is held that the board may employ an individual to do it, notwithstanding the authority to make such examination is vested in the board and notwithstanding the state examiner, too, is required to do it; it is held a matter of common knowledge that generally county commissioners do not have the knowledge and ability necessary thereunto. The opinion says: "Power to accomplish a certain result, which evidently cannot be accomplished by a person or body to whom the power is granted, *without the employment of other agencies,* includes the implied power to employ such agencies."
To like effect are *Harris* v. *Gibbins,* 114 Cal. 418, 46 Pac. 292; *Donlevy* v. *Sims,* 175 Ill. App. 290; *Wilson & Pullen* v. *Holding,* 170 N. C. 352, 86 S. E. 1043; *Lockyear* v. *Board of Commissioners,* 180 Ind. 464, Ann. Cas. 1916B, 1033, 103 N. E. 100; *Taylor* v. *Riney,* 156 Ky. 395, 161 S. W. 203; *Blades* v. *Hawkins,* 240 Mo. 187, Ann. Cas. 1913B, 1082, 112 S. W.

979, 144 S. W. 1198; *Board of Commissioners* v. *Davis,* 27 Colo. App. 501, 150 Pac. 324. In the case last cited, the opinion says: "We entertain no doubt that when a specific duty is by statute imposed on the board the power to employ such agencies as are reasonably necessary to effectually perform that duty is granted by implication, unless by statute the board is limited to certain means and agencies by which such duty is to be performed or power exercised. The county commissioners represent the county and have charge of its property and the management of its business concerns. They are necessarily vested with reasonable discretion in the administration of county affairs."

In *Fleener* v. *Litsey,* 30 Ind. App. 399, 66 N. E. 82, it is held that a Board of County Commissioners may enter into a contract with a party to have him search for property omitted from taxation and furnish to the county auditor information thereof. The opinion says the board has power "to pay for credible information that will add to the public revenues."

In *Hoffman* v. *Board of Commissioners,* 96 Ind. 84, the opinion holds that, while no statute is directly applicable, the board has power to contract for indexing the public records of the county, on the ground that the statutes invest the board with authority over county property, business and affairs and the interests of the county are involved.

In *Tasker* v. *Commissioners,* 82 Md. 150, 33 Atl. 407, it is held that the board may contract with a party to compile a book of abstracts of title of all unassessed lands, the opinion saying "the assessment could not be legally made at all until the names of the owners had been ascertained."

We shall not take the space to refer *in extenso* to any more decisions. However, in instances having some analogy to the case at bar, the implied powers of county governing boards are upheld, in the following cases, as liberally, we believe, as by the foregoing authorities: *Duncan* v. *Board of County Commissioners,* 101 Ind. 403; *City of Richmond* v.

*Dickinson,* 155 Ind. 345, 58 N. E. 260; *Board of Commissioners* v. *Workman,* 186 Ind. 280, 116 N. E. 83; *Clark* v. *State,* 187 Ind. 276, 117 N. E. 965; *Wilhelm* v. *Cedar County,* 50 Iowa, 254; *Shinn* v. *Cunningham,* 120 Iowa, 383, 94 N. W. 941; *Pennington* v. *Gammon,* 67 Ga. 456; *Decatur County* v. *Roberts,* 32 Ga. App. 771, 124 S. E. 810; *Board of Revenue* v. *Merrill,* 193 Ala. 521, 68 So. 971; *Ensley Motor Co.* v. *O'Rear,* 196 Ala. 481, 71 So. 704; *Clark* v. *Eagerton,* 207 Ala. 491, 93 So. 455; *Foshee* v. *State,* 210 Ala. 155, 97 So. 565; *Hall* v. *Lauderdale,* 46 N. Y. 70; *Wadsworth* v. *Board of Supervisors,* 139 App. Div. 832, 124 N. Y. Supp. 334; *Commissioners* v. *Keller,* 6 Kan. 510; *Mitchell* v. *Commissioners,* 18 Kan. 188; *Darling* v. *Board of Freeholders* (N. J.), 107 Atl. 854; *Slayton* v. *Rogers,* 128 Ky. 106, 107 S. W. 696; *Garland County* v. *Arkansas Cor. Met. Culvert Co.,* 112 Ark. 608, 165 S. W. 631; *Agua Pura Co.* v. *Las Vegas,* 10 N. M. 6, 50 L. R. A. 224, 60 Pac. 208; *Von Rosenberg* v. *Lovett* (Tex. Civ. App.), 173 S. W. 508; *Trimble* v. *Pittsburgh,* 248 Pa. 550, 94 Atl. 227; *Armstrong* v. *Board of Commrs.,* 103 Minn. 1, 114 N. W. 89; *Emberson* v. *Adams County,* 93 Neb. 823, 142 N. W. 294; *Braaton* v. *Olson,* 28 N. D. 235, 184 N. W. 829; *Williamson* v. *Snohomish County,* 64 Wash. 233, 116 Pac. 675; *Maurer* v. *Weatherby,* 1 Cal. App. 243, 81 Pac. 1083. Many more cases to like effect could be cited but it is not necessary to cite more.

In 15 C. J., p. 457, the general rule is stated thus: "It is well settled that a county board possesses and can exercise such powers * * * as are requisite to the performance of the duties which are imposed upon it by law. It must necessarily possess an authority commensurate with its public trusts and duties. Therefore, it possesses inherent authority to perform acts to preserve or benefit the corporate property of the county intrusted to it."

The gist of all of the foregoing authorities is that a county governing board may contract to have done work that is necessary to its care and management of the business and

affairs of the county and the preservation of county property, if it is not made by law the duty of some county official to do such work. Therefore, in our opinion, the decisive question before us is whether or not it was made by law the duty of the county clerk to obtain from the records of his office the information necessary to be had in giving notices of applications for tax deeds.

From a perusal of Chapter 92, Session Laws of 1927, the statute telling what the county clerk must do, it would appear that it is not the duty of that official to search the records of his office for the information required for notice of application for a tax deed. The chapter says the Board of County Commissioners may order and direct the county clerk to apply for the issuance to the county of a tax deed and it shall then be the duty of the county clerk to give the proper notice of the application for such tax deed and make the proper proof thereof; that is to say the county clerk must give notice to the owner and (if the property be occupied) the occupant and (if there be a mortgage of record) the mortgagee or (if the mortgage be assigned of record) the assignee. He must then make affidavit that he has done so. Those things he must do. To do them, he must obtain some information. The statute does not say how he is to get that information. It may be said it is implied he will get it from the records the law requires him to keep but, as we have seen, in many instances those records do not impart sufficient information. However, the county commissioners saw fit to provide a way for giving him the required information. When the statutes require an act to be done by a county official or county officials and do not provide a method of doing it, any reasonable and suitable means may be adopted. (*Harris* v. *Gibbins*, supra; *Prothero* v. *Board of Commrs.*, supra; *Wingate* v. *Clatsop County*, supra.) "Unless prohibited by law, a county board may adopt such means as in its judgment shall be expedient in assisting county officers properly to discharge the duties of their offices." (15 C. J.

459.) "It is a general rule that whenever a power is conferred upon the Board of County Commissioners but the mode in which the authority is to be exercised is not indicated, the board in its discretion may select any appropriate mode or course of procedure." (*Fisher* v. *Stillwater County*, 81 Mont. 31, 261 Pac. 607.)

However, if it may be questionable if it was not the duty of the county clerk to obtain from his records the information necessary to giving notice, there is another ground for obtaining it elsewhere and as it was obtained which, to our minds, is controlling, viz., the fact, established by the evidence, that his records are and were such that it was impossible for him to obtain it therefrom, with any expedition or any degree of certainty or reliability. It is convincingly establshed by overwhelming and practically undisputed evidence that the county clerk could use one of only two methods of obtaining the information from his records or in his office. They are (1) by searching all of the records, volume by volume, instrument by instrument; and (2) using the alphabetical name indices. He was not provided with a tract index, the only safe, sure, dependable method. The first mentioned method is out of the question. It would be tedious, slow, expensive, impractical. The second method, it is shown, is unreliable, unsafe, undependable, unbusinesslike. We cannot conceive that anybody would think of conducting private business of importance in such a manner. From the evidence, mistakes, blunders, inevitably would have resulted from its use. County business, if conducted at all, should be conducted right.

Plaintiffs contend, that being the case, the county clerk should have done the best he could with his imperfect facilities, leaving betterment of the unsatisfactory condition to a future session of the legislature. We do not think so. It is the duty of the county commissioners to look well to county affairs and to look after the county interests and county property. Their judgment led them to take steps to procure deeds to the property involved. They had a right so to do and a

duty to perform, as well. The method plaintiffs would have the county clerk use is shown to be unworkable and practically impossible. We must be governed by the evidence, as evidently was the trial court. It is held generally that if the law requires a county official to do a thing and it is impossible for him to do it in person and it may be done by other means such other means may be used. (*Prothero* v. *Board of Commrs.,* supra; *Von Rosenberg* v. *Lovett,* supra.) In the latter case, the opinion says: "It would be a vain thing to impose upon anyone a duty and deny him the means whereby he could perform such duty." Many of the cases hereinbefore cited advert to that point and hold likewise.

Getting down to statutory provisions in Montana and looking to the general powers conferred by statute, in this state, upon Boards of County Commissioners, we find in section 4465, Revised Codes, 1921, as amended by Chapter 54, Session Laws of 1927, powers conferred upon them as follows: "To supervise the official conduct of all county officers, * * * charged with assessing, collecting, safekeeping, management or disbursement of the public revenues; see that they faithfully perform their duties. * * * To purchase * * * any real or personal property, necessary for the use of the county, preserve, take care of, manage and control the same. * * * To sell * * * any property, real or personal, not necessary to the county business, belonging to the county. * * * To represent the county and have the care of the county property and the management of the business and concerns of the county in all cases where no other provision is made by law. * * * *To perform all other acts* and things required by law not in this title enumerated or *which may be necessary to the public discharge of the duties of the chief executive authority of the county government."* We do the italicizing and direct special attention to the italicized words.

Under all of the authorties we have cited, it occurs to us that these granted powers, identical with or very similar to

the powers granted in practically all of the states the court decisions of which we have cited, gave the Board of County Commissioners in this case, implied authority for its acts.

Plaintiffs cite many cases touching upon powers of county governing boards. They have been perused carefully but the most of them we consider inapplicable; nearly all of them hold that, if a duty to do a specific thing is put by law on a certain county official, the county governing board cannot contract lawfully with another to do it; in all such, too, the county official designated to perform a duty was able to perform it. We fail to see, however, that the specific duty here involved is put on the county clerk and, furthermore, if it be so put, it appears to be impossible, from a practical standpoint, of performance by him; hence, the inapplicability of the most of plaintiffs' citations. Others appear inapplicable upon other grounds.

Plaintiffs rely strongly upon *King* v. *Maries County,* 297 Mo. 488, 249 S. W. 418. A careful reading of the opinion in that case shows a number of points of difference between it and the case at bar. The opinion says the statutes made it the plain duty of certain county officials to do those things which the county court contracted to have done by a private individual; we do not see it so here. Furthermore, in that case there was no evidence, as there is here, that it was practically impossible for the county officials to perform the duty which it is said was cast upon them; for aught shown in the opinion they could perform it; if so, of course that was determinative of the case but here we have a different condition, the opposite. Again, in that case was involved collection of back taxes and, if faulty procedure might have resulted in some back taxes being overlooked, the county would have been merely without the money due therefrom; while here the object is procurement for the county of tax deeds, every step in which is liable to affect title and without good title the county could scarcely expect to sell the property

to advantage; and it appears the object of getting title was to sell. We do not consider that case controlling.

While there does not appear to be any prior decision of this court, directly in point, the case of *Jones* v. *Cooney*, 81 Mont. 340, 263 Pac. 429, sheds some light upon the implied powers of the Board of County Commissioners, in this state, in the supervisory and regulatory authority given it over the duties of other county officials, in the administration of county affairs, and the latitude allowed.

Plaintiffs seem to think it the duty of the county clerk to ultilize such information only as may be gleaned from the *indices* in his office but the statutes refer repeatedly to what is in his *records*. If the indices do not reveal infallibly what is in the records, his helplessness is apparent. He is not required to give notice of what his *indices* show but of what is in his *records*.

Plaintiffs contend that the appointment of two special deputies to the county clerk, authorized by the Board of County Commissioners, for the work by the board ordered done, was illegal. That question is not before us and is not in this case; we have here nothing to do with it. If the contention be sound, there is a remedy but it has no place in this proceeding.

Plaintiffs contend that the action of the board may result in the expenditure of more than $10,000 without the board having called for bids. When it may do so, that issue may be raised. Other contentions advanced by plaintiffs we think equally unsound.

Upon the record, we do not believe the Board of County Commissioners exceeded its implied powers in the premises. There is no question before us of the value of the services of the abstract company; only as to legality. By this decision, we do not mean to turn loose Boards of County Commissioners, to do whatever they may think they have implied power to do. Their powers should be exercised cautiously but under the facts of this case we do not see that there was

excess or abuse of power. In the matter of implied powers of boards, when questioned, each case must depend largely upon the facts involved.

In this case, we believe the trial court made the right deci-' sion. Finding no error, the order appealed from is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Stark, Matthews and Galen concur.